## FRANK MEDLIN *vs.* DAVID N. BLOOM.

Suffolk. March 27, 1918. — May 23, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Of physician. *Physician. Practice, Civil,* Conduct of trial: requests, rulings and instructions. *Evidence,* Relevancy and materiality.

Where, at the trial of an action of tort against a physician for injuries alleged to have resulted from negligence of the defendant in treating the plaintiff's eyes shortly after his birth, there is conflicting evidence, both on the question, whether the physician gave proper treatment within a few hours after the birth, and on the question whether he gave proper treatment when the symptoms of disease became apparent six days later, it is improper for the trial judge to rule that the jury should find for the defendant if they found that he was not negligent in the treatment he gave within the few hours after the birth.

Where, at the trial of the action above described, there was evidence that the baby's eyes began to show symptoms of disease on a Saturday six days after his birth, that the symptoms grew worse "and on Monday . . . the defendant was summoned, and after being solicited to come on several occasions, appeared at the house of the plaintiff's father" on the afternoon of Tuesday between five and six o'clock, it is proper for the trial judge to rule that "The fact that the defendant did not answer a call for treatment for the plaintiff promptly does not constitute negligence."

It was not evidence of negligence on the part of the defendant in the action above

described that he did not order nor advise the removal of the plaintiff to a hospital immediately upon discovering his affliction.

At the trial of the action above described evidence was not admissible as to the circumstances and environments in the plaintiff's home, nor as to whether treatment in a hospital then would have been proper or more efficient and desirable.

Evidence tending to show that the defendant in the action above described knew on a Tuesday afternoon, the eighth day after the plaintiff's birth, between five and six o'clock that the plaintiff's eyes had become inflamed, swollen and red and showed an unnatural discharge, and that a notice mailed by the defendant to the health department of the city where the plaintiff lived was postmarked on Thursday morning thirty minutes after midnight, is evidence of a violation by the defendant of R. L. c. 75, § 50, as amended by St. 1905, c. 251, § 2, requiring a notice from the physician under such circumstances "immediately," and is evidence of negligence, the evident purpose of the statutory requirement being to make it possible for immediate and scientific treatment to be given and blindness to be prevented.

TORT by a child for injury resulting in blindness alleged to have been caused by negligence of the defendant, a physician, in the rendering of professional services shortly after the plaintiff's birth, which occurred on April 14, 1916. Writ dated December 5, 1916.

In the Superior Court the action was tried before *Lawton*, J.

The evidence stated in the bill of exceptions as to failure of the defendant to attend the plaintiff promptly was as follows:

"The father and mother of the plaintiff and a Mrs. Hagan testified that the eyes of the baby were all right until Saturday, April 22, 1916, when the right eye became swollen, red and had some little unnatural discharge and the left eye was not as badly affected. The situation of things grew worse and on Monday, April 24, 1916, the defendant was summoned, and after being solicited to come on several occasions, appeared at the house of the plaintiff's father, Tuesday, April 25, 1916, between five and six o'clock in the afternoon."

Other material evidence is described in the opinion.

At the close of the evidence the plaintiff asked for and the trial judge, subject to the plaintiff's exception, refused to give the ruling quoted in the opinion. The defendant asked for and the trial judge gave, subject to exceptions by the plaintiff, the following rulings:

"1. If the infection in the plaintiff's eyes came from an outside source in no way related to treatment administered by the defendant, or connected therewith, the jury should return a verdict for the defendant.

"2. The fact that the defendant did not answer a call for treatment for the plaintiff promptly does not constitute negligence.

"3. If the jury finds that upon the evidence the defendant did not have charge of the birth of the child, the defendant owed no duty to the plaintiff to put drops of nitrate of silver in the plaintiff's eyes and the jury should return a verdict for the defendant.

"4. That the defendant did not order the plaintiff taken to the hospital is not in itself evidence of negligence sufficient to justify a verdict for the plaintiff."

Portions of the judge's charge to which the plaintiff excepted were as follows:

"For one thing, you do not have to consider and ought not to consider whether he made a report to the board of health as promptly as he ought to have done, or as the statutes expect that he should make a report. As I understand it, there is no question but what he did make the report that the board of health required, but some question has been raised whether he ought not to have done it twenty-four, forty-eight, or seventy-two hours earlier. But I instruct you that anything of that sort, any neglect of that sort could not have had any bearing on the progress of the child's disease, and if you say that he was negligent in that respect; if you say the board of health would have good ground to complain that he did not report it more promptly, it has n't anything to do with this case, and it is of no consequence. . . .

"There has been some suggestion, apparently, that it was negligence — that it was neglect of the skill that an ordinary physician should have, failure of the skill that an ordinary physician ought to exercise — that he did not immediately send the child to a hospital, or perhaps advise that the child should be sent to a hospital, . . . that he did not immediately advise that the child should be sent to the hospital. I instruct you that that is not evidence of negligence, if you find, and it is admitted, that he did not. I instruct you that the fact he did not immediately send the child to the hospital, or immediately advise that the child be sent to a hospital, is no evidence of negligence."

There was a verdict for the defendant; and the plaintiff alleged exceptions.

*E. H. Savary*, for the plaintiff.

*T. I. Hogan*, for the defendant.

CROSBY, J. This is an action of tort for the alleged negligence of the defendant, a physician, in the care of the plaintiff, an infant, by reason of which he became blind.

The defendant signed a birth certificate which stated that he personally attended the birth of the plaintiff, although he admitted he did not deliver the child, but attended him between five and six hours after he was born. He testified that when he first was called he put a solution of nitrate of silver in the plaintiff's eyes; this was denied by the plaintiff who offered evidence to the contrary. That such treatment was proper "and is a part of the technique of child birth," was admitted by the defendant; and there was also evidence that the administering of the solution of nitrate of silver at birth "would make the likelihood of the development of the disease of ophthalmia, which caused the blindness, very much less." The defendant offered evidence that, even if no solution of nitrate of silver was administered at birth, it was shown that the disease was due to a secondary infection, as the symptoms did not develop until eight days afterwards, and that the failure to give the treatment made no difference. The questions, whether the defendant failed to administer the treatment or not, and, if it was not administered, whether the plaintiff's blindness was due to such omission as a proximate cause, were rightly submitted to the jury.

There was nothing to show that the plaintiff's eyes were affected with ophthalmia until April 22, 1916, when the right eye became swollen and red and had an unnatural discharge, — the left eye was not as badly affected. There was evidence that the defendant was called on April 24, 1916, and, after being solicited to come on several occasions, appeared at the house of the plaintiff's father on April 25, 1916, between five and six o'clock in the afternoon; that at that time the plaintiff's eyes were swollen, red and closed, with pus coming from each eye when opened, and that the defendant administered treatment; that the next afternoon between five and six o'clock the defendant came again and took a smear from the plaintiff's eyes, which were in a worse condition than on the day before. The records of the health department of the city of Boston showed that written notice of the case, bearing a postmark "12:30 A. M. April 27, 1916," was received.

The case is before us upon the plaintiff's exceptions to the exclusion of testimony, the giving of rulings requested by the defendant, the refusal of the trial judge to give a ruling requested by the plaintiff, and to certain parts of the judge's charge.

The defendant's first and third requests, which related to the treatment of the plaintiff by the defendant on his first visit, could not have been given, because, if on that occasion he administered a solution of nitrate of silver and then gave to the plaintiff proper treatment, still there was evidence of negligence of the defendant afterwards. Accordingly these exceptions must be sustained.

The second exception is overruled. The failure of the defendant to attend the plaintiff promptly could not have been found to be negligence under the circumstances.

The fourth exception cannot be sustained. While it may be that the plaintiff would have received better medical treatment if he had been removed to a hospital, yet the defendant's failure to order such removal did not upon this record of itself constitute evidence of negligence sufficient to justify a verdict for the plaintiff. While a physician may advise the removal of a patient to a hospital in an ordinary case, he has no authority to order such removal.

The testimony relating to the plaintiff's home, and whether treatment there would have been proper or would have been more efficient and desirable in a hospital, was excluded properly.

The presiding judge instructed the jury in substance that the failure of the defendant to report the case to the board of health as promptly as he should have done under R. L. c. 75, § 50, as amended by St. 1905, c. 251, § 2, was immaterial, and was not to be considered as evidence of negligence. We are of opinion that this was error, and that the plaintiff was entitled to the ruling asked for by him — "If you find that the defendant violated the provisions of St. 1905, c. 251, that is evidence of negligence on the part of the defendant." *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582. *Doherty* v. *Ayer,* 197 Mass. 241. *McCarthy* v. *Morse,* 197 Mass. 332, 336, 337. It could have been found that the defendant on the afternoon of April 25, 1916, knew that the plaintiff's eyes had become inflamed, swollen and red, and showed an unnatural discharge within two weeks after

birth. In these circumstances, it was the defendant's duty, under the statute, immediately to give notice thereof in writing over his own signature to the board of health. A penalty is prescribed for violation of the statute. The evidence shows that the notice mailed by him was postmarked "12:30 A. M .April 27." The evident purpose of this statute is that the board of health may be informed without delay of the existence of a most serious disease with which very young children may be affected, so that immediate and scientific treatment may be received and blindness prevented. St. 1905, c. 251, § 1. Upon this record it could not properly have been ruled as matter of law that the delay of the defendant in notifying the board of health of the plaintiff's condition was not evidence of negligence. It was for the jury to determine whether the defendant immediately gave the notice required by the statute. If he failed in this respect, such failure was evidence of negligence, which could have been found to have resulted as a proximate cause of the plaintiff's blindness. The exception to the instructions given upon this branch of the case, and the failure to give the ruling asked for by the plaintiff, must be sustained.

The other exceptions need not be considered, as the same questions may not arise at another trial.

*Exceptions sustained.*