DIETSCH, A MINOR, APPELLANT, *v.* MAYBERRY, APPELLEE.

(No. 282—Decided May 18, 1942.)

*Messrs. Gebhard & Hogue* and *Mr. Henry Hasley,* for appellant.

*Messrs. Newcomer & Parker* and *Messrs. Barrett, Barrett & McNagny,* for appellee.

CARPENTER, J. This was an action for damages against a physician for alleged malpractice in that he failed to properly care for the eyes of plaintiff at his birth and for the loss of one of them a few weeks thereafter. From a verdict and judgment for defendant, plaintiff appealed on questions of law.

The defendant is a general practitioner of medicine in Bryan and Williams county, Ohio, and was employed by the father of plaintiff to attend the birth in the family home, where plaintiff was born April 4, 1940. A competent practical nurse employed by the father, and a registered nurse who accompanied the doctor and was employed by him, assisted at the birth, and attended the plaintiff.

It is undisputed that plaintiff's eyes were then swollen more than normal, and that the nurses at the direction of defendant instilled in his eyes the silver nitrate drops, or prophylactic, required by Section 1248-5, General Code.

April 7, 1940, the defendant called at the Dietsch home and examined the plaintiff and his eyes were then "still a little swollen" and "there was some discharge from both eyes." This he attributed to the silver nitrate. April 11, 1940, he again called and the nurse in charge called his attention to the continued discharge and swelling of both eyes, and, as to the left one, that there was something on the ball that appeared like a blister which would not wash off with the boric acid solution she had been using at defendant's direction. After a minute examination of the eyes, he told the mother they "were perfectly all right

.and would be O. K. and she was not to worry.'' He prescribed the use of a five percent solution of argyrol, which was applied as directed.

April 15th the swelling in the left eye, and the spot in its center, having become more pronounced, the nurse telephoned the defendant about it and the next day the father took plaintiff to defendant's office. The left ''eye was bulging and had a grayish appearance or a dull appearance'' and defendant suggested consultation with an eye specialist. At the instance of the father, he arranged with one at Fort Wayne, Indiana, to see him the next day. Before plaintiff reached the specialist his left eye had ruptured and when it failed to respond to treatment, it was removed May 6, 1940.

In the pleading and trial, plaintiff's claim was that the spot on the left eye was a corneal ulcer which by prompt use of available treatment could have been cured. Some medical evidence supporting all of these claims was before the jury. The defendant's claim was that the condition of that eye was due to congenital weakness and could not have been saved by any known treatment.

The first error assigned is that the court withdrew from the consideration of the jury an allegation of negligence in the petition that defendant failed to administer or cause to be administered the prophylactic treatment at birth. The undisputed evidence is that this was done, both nurses and the doctor so testified, and there was no contrary evidence.

The second assignment of error is more difficult. It is that the court, on motion of defendant, withdrew from the consideration of the jury as a ground of negligence the allegation of the petition that the defendant failed to report to the local health officer that plaintiff was suffering from ''inflammation of the eyes'' as

provided for in the following sections of the General Code:

Section 1248-1. "Any inflammation, swelling or redness in either one or both eyes of any infant, either apart from or together with any unnatural discharge from the eye or eyes of such infant, independent of the nature of the infection, if any, occurring any time within two weeks after the birth of such infant, shall be known as 'inflammation of the eyes of the new born.'" 106 Ohio Laws, 321.

Section 1248-2. "It shall be the duty of any physician, surgeon, obstetrician, midwife, nurse, maternity home or hospital of any nature; parent, relative and any persons attendant on or assisting in any way whatsoever, any infant or the mother of any infant at childbirth or any time, within two weeks after childbirth, knowing the condition, hereinabove defined, to exist, within six hours thereafter, to report such fact, as the state board of health shall direct, to the local health officer of the city, town, village or whatever other political division there may be, within which the infant or the mother of any such infant may reside. For such services the attending physician, surgeon, obstetrician, midwife, nurse, maternity home or hospital shall receive from the state treasurer a fee of fifty cents." 106 Ohio Laws, 321.

The purposes and effect of this procedure are disclosed by Section 1248-3 and the material part of Section 1248-4, General Code, which are as follows:

Section 1248-3. "It shall be the duty of the local health officer:

"1. To investigate or to have investigated each case as filed with him in pursuance with the law, and any other such case as may come to his attention.

"2. To report all cases of inflammation of the eyes

of the new born and the result of all such investiga-
tion as the State Board of Health shall direct.

"3. To conform to such other rules and regulations
as the State Board of Health shall promulgate for his
further guidance." 106 Ohio Laws, 321.

Section 1248-4. "It shall be the duty of the state
board of health:

"1. To enforce the provisions of this act.

"2. To promulgate such rules and regulations as
shall, under this act, be necessary for the purpose of
this act, and such as the State Board of Health may
deem necessary for the proper guidance of local health
officers.   *   *   *

"4. To provide, if necessary, daily inspection and
prompt and gratuitous treatment to any infant whose
eyes are infected with inflammation of the eyes, pro-
vided further that the State Board of Health, if neces-
sary, shall defray the expense of such treatment from
such sum as may be appropriated for its use.   *   *   *

"6. To furnish copies of this law to all physicians
and midwives as may be engaged in the practice of
obstetrics or assisting at childbirth."

Regulations 31, 32, 34, 35 and 36 of the State Board
of Health, now the State Department of Health, in
April, 1940, provided the details how physicians should
make the reports required by the statute, substan-
tially as it specifies, except by regulation 32 if "the
condition of the case so requires, in addition to the
written report, an immediate notice of such case shall
be given to the health commissioner in the most rapid
manner available."

The court is bound to take judicial notice of such
rules and regulations. *Duncan* v. *Evans*, 60 Ohio App.,
265, 20 N. E. (2d), 729.

The only reported decision directly in point cited by
counsel or that the court has been able to find, was by

the Supreme Judicial Court of Massachusetts in *Medlin* v. *Bloom,* 230 Mass., 201, 119 N. E., 773. That was an action against the attending physician by a child who had lost the sight in both eyes soon after birth. The birth occurred April 14, 1916; swelling in the eyes was observed by the parents April 22nd, and the doctor was called on the 24th, but did not come until the evening of the 25th. The evening of the 26th he called again and thereafter reported the case to the board of health by mail, which was postmarked "12:30 a. m. April 27, 1916." The board promptly caused the child to be sent to a hospital for special treatment, but it did not avail.

The trial court refused the request of the plaintiff to instruct the jury that:

"If you find that the defendant violated the provisions of St. 1905, C. 251, that is evidence of negligence on the part of the defendant."

The statute referred to, speaking of the duties of such birth-attending physician, provided:

"If one or both eyes of an infant whom or whose mother he is called to visit become inflamed, swollen and red, and show an unnatural discharge within two weeks after the birth of such infant, he shall immediately give notice thereof in writing over his own signature to the selectmen or board of health of the town . * * * [or forfeit $50 to $200] for each offense."

The statute was in the same form at the time of the birth in 1916 and of the decision reported in 1918.

The court reversed the judgment for this error and said:

"Upon this record it could not properly have been ruled as a matter of law that the delay of the defendant in notifying the board of health of the plaintiff's condition was not evidence of negligence. It was for the jury to determine whether the defendant immed-

iately gave the notice required by the statute. If he failed in this respect, such failure was evidence of negligence, which could have been found to have resulted as a proximate cause of plaintiff's blindness.''

Section 4427 *et seq.*, General Code, impose upon a physician called to attend a person suffering from smallpox a duty to report the case to the health officer, who is required to report the matter to the board of health which shall cause an inspection to be made and a quarantine established. In *Jones* v. *Stanko, Admx.,* 118 Ohio St., 147, 160 N. E., 456, the defendant doctor did not make such report and plaintiff's decedent died from smallpox contracted from the doctor's patient. The trial court refused to instruct the jury that if it found that defendant failed to comply with the provision of the statute and that such failure was the proximate cause of the death of the decedent, as alleged in the petition, the verdict should be for the plaintiff. This was prejudicial error and a judgment for defendant was reversed.

In principle, the effect of failure to give notice was the same in this case, and the Ohio decision conforms to that in *Medlin* v. *Bloom, supra.*

These statutes relating to report of inflamed eyes of the new born have a two-fold purpose: (1) To benefit the new born by preventing blindness, and (2) to relieve the public generally from the burden another blind person would cast upon it. (As amended since this case occurred, the Ohio law now specifically applies to spread of contagion or infection). They brought to the plaintiff a more immediate benefit than the safety statute in *Schell* v. *DuBois, Admr.,* 94 Ohio St., 93, 113 N. E., 664, did to that plaintiff, which the court said was for the protection of the public, and its violation was negligence *per se* as to the plaintiff. Such being the case here as in *Jones* v. *Stanko, supra,* and

*Medlin* v. *Bloom, supra,* plaintiff was entitled to have the jury determine whether defendant violated the statute and if so, to treat such violation as negligence *per se.* Both courts, in effect, say that it is for the jury to determine whether such negligence was the proximate cause of the injuries.

From the undisputed evidence, in fact from defendant's own testimony, plaintiff's eye condition and defendant's knowledge of it were such on the April 11th visit, if not before, that he should have reported it, and his failure to do so was a violation of the statute. In this respect the situation is more unfavorable to the doctor than it was in *Medlin* v. *Bloom, supra,* where a report was actually made and the jury question was whether it was made within the time required. If not, the court said it "could have been found to have resulted as a proximate cause of the plaintiff's blindness." What would that court have said had no report ever been made? Can it be said that because this defendant completely ignored the statute, he can escape any civil responsibility which may follow from his dereliction of duty? *Jones* v. *Stanko, supra,* answers this.

The defendant here urges that even if the treatment the plaintiff might have had, had the notice been duly given, would only have resulted in a chance of recovery, which is not enough to sustain a verdict, citing *Kuhn* v. *Banker,* 133 Ohio St., 304, 13 N. E. (2d), 242, 115 A. L. R., 292. The positive evidence in behalf of plaintiff that his affliction was a corneal ulcer which was curable, not might be, tended to prove that he had more than a "chance of recovery," had proper treatment been provided. Whether this was a corneal ulcer and could be cured were for the jury to say. If it found these propositions true, plaintiff's situation was like the one in *Hubach, a Minor,* v. *Cole,* 133 Ohio

St., 137, 12 N. E. (2d), 283, and not like the probably irreparable bone of the plaintiff in *Kuhn* v. *Banker, supra.*

The Fort Wayne, Indiana, eye specialist who had charge of plaintiff from the time he got there until the eye was removed was an important witness, and as he was leaving for army service before the case could be tried, his deposition was taken. Two assignments of error arise in connection with the evidence presented by the deposition.

The plaintiff called this witness, but only inquired of him as to the identity of the material from the enucleated eye, part of which had been used in making some slides for microscopic examination by other medical experts who testified for plaintiff. On cross-examination of this witness, over the objection of plaintiff both at the taking of his deposition and when it was read at the trial, defendant qualified him as an expert and proceeded to inquire of him at length about the condition he found in the eye and his opinion as to what had caused that diseased condition and made necessary the removal. That this was permitted is the third assignment of error.

The Ohio rule on the limits of cross-examination is stated in paragraph four of the syllabus in *Legg* v. *Drake,* 1 Ohio St., 286, as follows:

"When a witness is produced and examined by a party in an action, even though he be interested to testify against the party calling him, the other party is not limited, in his cross-examination to the subject-matter of the examination in chief, but may cross-examine him as to all matters pertinent to the issue on the trial; limited, however, by the rule, that a party can not before the time of opening his own case, introduce his distinct grounds of defense or avoidance, by the cross-examination of his adversary's witnesses."

This decision was approved and followed in *Smith* v. *State,* 125 Ohio St., 137, 180 N. E., 695, and has been recognized and followed, without exception, in many other reported decisions.

The pleadings and evidence herein raised but two questions as determinative of the ultimate issue, the liability of the defendant. They were, whether he was negligent as charged, and, if so, whether such negligence proximately caused the plaintiff's damage. The only defense was a general denial. On these questions the plaintiff had the burden of proof. The defendant had no "distinct grounds of defense or avoidance." In this situation, any relevant and material evidence there could be in the case was "pertinent to the issue on trial" and no error was committed by permitting the cross-examination.

In that cross-examination the witness expressed as his opinion that the cause of the eye trouble was "congenital weakness * * * with the trauma of delivery," and that it was not a corneal ulcer. On redirect examination he was asked about a written memorandum he had given plaintiff's father in which he had said there was "ulceration of the entire central portion of the cornea." The memorandum was not presented to the witness, nor was it present at the taking of the deposition. On re-cross-examination, the witness explained what he meant by the quoted language of the writing.

At the trial, plaintiff offered the memorandum as an exhibit, but it was excluded and this is assigned as error. Under no principle of evidence was plaintiff entitled to this as substantive evidence. Its purpose could only have been to impeach the testimony of plaintiff's own witness, but as the statement was admitted by him, and substantially the language of it,

nothing could have been gained by its introduction for that purpose.

Before argument, the court was smothered with an avalanche of separate requests to charge, twelve offered by plaintiff, of which ten were given, and twenty by defendant, of which fifteen were given, so the jury got twenty-five, and they occupy nine solid cap-size pages in the record. Speaking from their trial-court experiences, the judges of this court wonder what all this maze of separate and disconnected technical propositions of law could have meant to the jury. It too may very well have had a smothered feeling from them. The propriety or usefulness of the establishment of a reasonable number of pertinent legal principles as a basis of argument by counsel is not depreciated, but in such quantity as they were here they lose their usefulness, except as often happens, their errors make necessary reversals unfortunate for their proponents.

When such instructions are offered separately, as they were, each should be complete and correct in itself, but it is said in *Wymer-Harris Construction Co.* v. *Glass, Admx.,* 122 Ohio St., 398, 171 N. E., 857, 69 A. L. R., 517, that:

"It is the duty of the court to consider each separate charge given in connection with all other separate charges given upon the same subject."

The charges are before the jury during arguments and are usually used in connection with the arguments, hence they can not be aided by the general charge of the court.

Plaintiff objected to each instruction given at the request of defendant, and now assigns the giving of most of them as error. To quote in full and comment on each one separately would unduly extend this, already too long, memorandum, hence they will be re-

ferred to by the number given them when tendered.

The measure of a physician's duty is stated in paragraph one of the syllabus in *Gillette* v. *Tucker*, 67 Ohio St., 106, 65 N. E., 865:

"A surgeon and physician, employed to treat a case professionally, is under an obligation, which the law implies from the employment, to exercise the average degree of skill, care and diligence exercised by members of the same profession, practicing in the same or a similar locality, in the light of the present state of medical and surgical science."

In defendant's instructions 3, 4, 8 and 9, attempt was made to lay down that rule in various ways, but in all of them the element of "diligence" was omitted. This was particularly important in this case for it appears that the derelictions of duty with which defendant was charged were mostly those of omission. It is manifest that some unhealthy condition existed in plaintiff's eye which was not caused by the defendant. The real question is: Did he fail to do something his duty required him to do promptly that would have resulted in the cure of that unhealthy condition and prevented the loss of the eye? Hence "diligence" was the all-important element, and its omission from these instructions was misleading to the jury, and renders them prejudicially erroneous.

This element is also omitted in numbers 6 and 7, which speak only of treatment, but are silent on failure to treat. The same is true of number 15, which said:

"If you find that the sole proximate cause of plaintiff's injury was a condition which existed at the time of his birth, you should return a verdict for the defendant."

This fails to take into account the possibility that the jury could find that had defendant employed the

care, skill and diligence the law required of him, the "condition which existed at the time of birth" could have been cured.

In this case the element of omission by the defendant in his duties to plaintiff should not be omitted from the instructions on that subject. The rule in this respect is stated in the seventh paragraph of the syllabus in *Ault* v. *Hall*, 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128.

Several of the instructions given at the instance of plaintiff contained the element of diligence, and were, in that respect, inconsistent with those of defendant. With this conflict, and where there were twenty-five separate charges given that occupy nine cap-size pages of the typewritten record, it is questionable to assume that the jury got the "correct and comprehensive definition" of the principle which the court alluded to on page 406 in *Wymer-Harris Construction Co.* v. *Glass, supra,* or which of those inconsistent instructions the jury followed.

No prejudicial error was found in the court's general charge, except the omission to properly submit as a charge of negligence the failure to report to the health officer as before pointed out. The verdict and judgment are not against the weight of the evidence.

For the errors noted, the judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

OVERMYER and LLOYD, JJ., concur.