**BROKAMP et al., Appellants,**

**v.**

**MERCY HOSPITAL ANDERSON et al., Appellees.**

[Cite as *Brokamp v. Mercy Hosp. Anderson* (1999), 132 Ohio App.3d 850.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-971077.

Decided April 16, 1999.

854

*John H. Metz,* for appellants.

*Roetzel & Andress* and *June Smith Tyler*, for appellees.

SUNDERMANN, Presiding Judge.

I

Introduction

On August 29, 1994, plaintiffs-appellants, Daniel and Donna Brokamp, filed a medical negligence claim and a loss-of-consortium claim against defendants-appellees, Mercy Hospital Anderson and James Barringer. They alleged that Mercy Hospital and Barringer, one of the hospital's nurses, were negligent in administering an intramuscular injection in Daniel's leg after a surgical procedure was conducted at the hospital. The Brokamps amended their complaint on March 10, 1997. A jury trial commenced on October 14, 1997, and, on November 4, 1997, the jury rendered a verdict in favor of the appellees. On December 3, 1997, the Brokamps moved for a new trial and judgment notwithstanding the

verdict ("JNOV"), and on December 16, 1997, they filed a notice of appeal. By order, this court remanded the case to the trial court for the limited purpose of permitting that court to consider and rule on the motions for new trial and JNOV. The trial court overruled the motions on February 19, 1998, and the case was then submitted to us for review on the merits.

## II

### Statement of Facts

It is uncontested that on August 30, 1993, Daniel Brokamp had surgery on a disc in his lower back at Mercy Hospital Anderson. Following the operation, Daniel was transferred to the Orthopedic Unit A1 so that his recovery could be monitored. At 11:15 a.m., Nurse Barringer administered 100 milligrams of Demoral in Daniel's thigh by an intramuscular injection in order to relieve Daniel's back pain resulting from the surgery. The injection was documented in the medical record but the anatomical site of the injection was not recorded. Daniel contended that he suffered an injury to his right leg as a result of the injection, and Donna requested relief for loss of consortium.

The basis of this dispute focuses on how and where the intramuscular injection was given and the extent, if any, of the injury to Daniel's leg. At the trial, conflicting testimony relating to these issues was presented.

Barringer testified that he had no recollection of Daniel or the events in question. But, based on a review of Daniel's medical chart, Barringer testified that he did in fact administer the intramuscular injection. He also testified that, based on the medical chart, Nurse Extender Marla Arszman took Daniel's vital signs around the same time the injection was administered. Although Barringer was unable to state where he gave the injection on August 30, 1993, he testified that his normal practice was to give an intramuscular injection in the upper outer quadrant of the buttocks, unless the patient could not be turned over on his side, in which case he would give the injection in the middle part of the thigh. Further, he testified that he had never given an intramuscular injection to a patient in the upper quadrant of the thigh. Barringer also testified that if a patient complained that an injection was painful, he would stop the injection and discontinue administering the drug.

Daniel, his wife, Donna, and their children, Daniel Jr. and Tonya, testified that two nurses were present when the shot was given, a male and an older female. They all testified that they saw Daniel's leg jerk upwards when the shot was administered. But they varied as to where the injection was administered. Daniel testified that the male nurse administered the shot in the upper area of his right thigh toward the front. Donna and Tonya testified that Daniel was turned

on his side when the shot was given. Daniel Jr. testified, based on a prior deposition, that the shot was administered under his father's rear end.

According to Daniel, the whole right front part of his leg was burning after he received the injection. Donna testified that she followed the nurses into the hall to ask them to make a note of the incident, and that she saw the older female nurse chart something in the middle of the page. Donna also stated that when she later saw the medical report, the page produced by the hospital was different from the one she had seen in the hall.

Throughout the day, Nurses Williamson and Chapman continued to evaluate Daniel's recovery. Williamson and Chapman both testified that Daniel never complained of burning pain, tingling, numbness, or hypersensitivity in his right leg, while Daniel testified that his thigh and leg continued to burn and were numb. Later that day, Daniel was discharged from the hospital.

Daniel testified that his back improved following the surgery, but that he began suffering from pain in his leg and thigh. In a follow-up visit with his back surgeon, Dr. Ferree, Daniel complained of numbness in his leg, particularly in the lateral femoral cutaneous nerve. Ferree referred Daniel to Dr. Fitz to determine the etiology of Daniel's leg pain. Dr. Fitz opined that, based on Daniel's explanation of his pain, he had suffered from an injury to the lateral femoral cutaneous nerve. It was generally agreed upon by expert testimony that if the intramuscular injection had been properly administered in Daniel's leg, then it was impossible for Daniel to have suffered an injury to his lateral femoral cutaneous nerve. But if the shot was improperly administered in the upper quadrant of the thigh, then an injury to the lateral femoral cutaneous nerve could have occurred.

A jury found that the hospital was not negligent in its care of Daniel and, as a result, that Donna had not suffered loss of consortium. The trial court entered judgment in favor of Mercy Hospital and Barringer, and the Brokamps appealed. In addressing the Brokamps' twenty-one assignments of error, we have discussed them in the order that they would have occurred at trial. Based on our review of the record, we hold that none of their assignments of error is well taken, and we affirm the judgment of the trial court.

## III

### Assignments of Error

#### A. Motion *in Limine*

In their nineteenth assignment of error, the Brokamps allege that the trial court erred in overruling their motion *in limine,* which sought to prohibit the introduction of "other prior injuries" and workers' compensation matters.

Because the court sustained the motion *in limine* relating to workers' compensation matters, and because evidence of workers' compensation was never admitted at trial, we conclude that this part of the assignment is without merit. As to the remaining part of the assignment, we find the Brokamps' argument unpersuasive.

A motion *in limine* "is a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of an evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted." [1] The power to grant a motion *in limine* lies within the sound discretion of the trial court. [2]

In overruling the motion *in limine* relating to prior injuries, the trial court here stated:

"It is very difficult to determine this because I don't know what relevance the prior injuries may have. They may have some and they may not.

"They may be intricately woven in the medical works and not able to be redacted. I simply cannot decide that at this time."

Balancing the court's reasoning against the Brokamps' argument that they filed the motion *in limine* "to prevent defense from raising irrelevant issues which clearly were meant to influence the jury and mislead them," we conclude that the trial court did not abuse its discretion in denying the motion *in limine*. The issues of causation and injury were unresolved issues in this case, and the resolution of whether to admit any reference to other injuries was properly left for the court's determination at trial. We note that the Brokamps were still accorded the opportunity to object to the introduction of other injuries only tangentially related to this case, and that, in fact, such objections were made and sustained. Accordingly, we conclude that the trial court did not err, and the nineteenth assignment of error is overruled.

### B. Discovery Rules

In their ninth assignment of error, the Brokamps contend that the trial court erred in permitting appellees to call two rebuttal witnesses, over objection, who were not identified on the pretrial statement, and that the trial court erred in allowing a witness to discuss matters outside the scope of discovery. Specifically, they claim the following irregularities: (1) appellees were permitted to call two witnesses, Janna Deen and Marla Arszman, who were not listed on the defense's pretrial statement, and (2) Cozetta Brummer was permitted to testify at trial to

---

1. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 288, 503 N.E.2d 142, 145.

2. See *id.* at 201, 28 OBR at 287–288, 503 N.E.2d at 145.

matters that she stated she would not testify to in her discovery deposition. After reviewing the record, we find no irregularities.

■ It is well established that one of the purposes of the Rules of Civil Procedure is to eliminate surprise, and this is accomplished by way of discovery, which provides for the free flow of accessible information between parties upon request.[3] Civ.R. 26(E) recognizes a party's continuing obligation to supplement responses to interrogatories by identifying experts who are expected to testify at trial. In reviewing discovery rulings, we ordinarily apply an abuse-of-discretion standard.[4] However, "[t]he exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." [5]

■ After reviewing the record, we conclude that the trial court did not abuse its discretion in admitting Deen's testimony. First, the Brokamps were aware of the involvement of representatives of Mercy Hospital in the case because they themselves listed "representatives of defendant hospital" as potential witnesses on their pretrial statement. However, the Brokamps were not aware of the name of one particular representative until Daniel identified her in court. Based on the record before us, we cannot accept the Brokamps' argument that they were unduly surprised by the introduction of Deen as a witness. Accordingly, we conclude that the trial court did not abuse its discretion by permitting Deen's testimony where an in-court identification was made by one of the Brokamps, and their own pretrial statement referred, albeit generally, to Deen.

■ Second, permitting Marla Arszman's testimony as a rebuttal witness was within the trial court's discretion. At sidebar, the following colloquy took place in determining the admissibility of Arszman's testimony:

"MRS. TYLER: We learned during our time in here that Mrs. Brokamp was saying that she saw somebody write something on the record that's no longer in the chart.

"Only person could have written anything else besides Etta Williamson or Mr. Barringer is the nurse extender who was in the room.

---

3. See, *e.g., Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 85, 19 OBR 123, 124–125, 482 N.E.2d 1248, 1250.

4. See, *e.g., Tracy v. Merrell Dow Pharm., Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880; *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599.

5. *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 34, 7 OBR 34, 36–37, 454 N.E.2d 177, 180.

"THE COURT: So I am letting this witness in because the plaintiff brought up something new in its case that was not revealed to the defendant, so the defendant was taken totally by surprise and that's why I permitted that."

 Undue surprise occurs where the expert witness's undisclosed testimony creates a substantial likelihood of surprise, and there is an indication that one party has deliberately disrupted the free flow of information between the parties.[6] Here, the trial court was attempting to rectify an undue surprise to the appellees, which was created by the Brokamps. Therefore, we are hard-pressed to understand exactly how the Brokamps were unduly prejudiced by Arszman's rebuttal testimony where they first raised the issue of altered documents at trial, and where, according to the pretrial statement, rebuttal witnesses were permitted to be called when necessary. Without further explanation by the Brokamps beyond a general assertion that they were prejudiced, we conclude that the trial court did not abuse its discretion in admitting Arszman's rebuttal testimony.

 Finally, it is unclear from the discovery deposition exactly what limitations, if any, were placed on Brummer during her trial testimony. There was a general discussion at the discovery deposition that Brummer would not testify as an expert on lateral femoral cutaneous nerve injuries. However, she was listed as an expert on the pretrial statement. Because no ruling was made on this matter and because the Brokamps' abbreviated discussion of this aspect of the assignment does not shed light on this issue, we can only conclude that they were on notice that Brummer would be testifying as an expert, and that a discussion of lateral femoral cutaneous nerve injuries fell within her expertise. Accordingly, the ninth assignment of error is overruled.

## C. Control and Interrogation by the Court

 In the Brokamps' eighth assignment of error, they allege that the trial court erred in *sua sponte* questioning, over objection, a nurse expert witness called by appellees, which created prejudicial implications. We disagree.

It is within the court's discretion to interrogate witnesses in an impartial manner under Evid.R. 614(B): "The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." The trial court may question a witness as to relevant matters, but the court must be careful to ensure that there is no indication to the jury that one side or the other is favored by its questioning.[7]

---

6. See *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 282, 598 N.E.2d 1187, 1197.

7. See *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 50 O.O.2d 322, 256 N.E.2d 613, paragraph three of the syllabus; *Weil v. Diamond Internatl. Corp.* (June 13, 1981), Hamilton App. No. C–800138, unreported, 1981 WL 9792.

The questions asked by the court here were not partial to either side. Specifically, the court inquired about who established the nursing standards and whether Mercy Hospital had a written policy about where to give an intramuscular injection. The record clearly demonstrates that the questions were relevant to this case and did not influence the outcome of the case in favor of one party. Accordingly, we overrule the eighth assignment of error.

### D. Cross–Examination

In their twentieth assignment of error, the Brokamps allege that the trial court erred in permitting cross-examination of Donna Brokamp on the issue of prior retention of counsel. We are unpersuaded by this argument.

Evid.R. 611(B) permits cross-examination "on all relevant matters and matters affecting credibility." The Ohio Supreme Court has stated:

"The scope of cross-examination and admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there is a clear and prejudicial abuse of discretion." [8]

The trial court did not abuse its discretion by permitting cross-examination on retention of counsel, because the Brokamps had put the issue of "prior retention of counsel" directly in issue. On direct examination, Donna Brokamp placed her credibility at issue when she stated, "We are not the type of people to run to the media or, you know, run to an attorney." Further, the trial court limited the cross-examination on this issue, confining the scope and duration of the questions. Accordingly, we conclude that there is no evidence showing a clear abuse of discretion, and we overrule the twentieth assignment of error.

### E. Relevancy of Evidence

The Brokamps allege in their fourth, fifth, sixth, twelfth, sixteenth, seventeenth, and eighteenth assignments of error that the trial court abused its discretion in permitting the admission of the following evidence: (1) demonstration evidence, (2) Dr. Katkin's discovery deposition, (3) habit testimony, (4) diagram evidence, (5) medical records, (6) expert testimony, and (7) a surveillance videotape. They also assert in their twenty-first assignment of error that the trial court erred by not admitting exhibit 3.

Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

---

8. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 407 N.E.2d 490, 493.

Moreover, the trial court is vested with broad discretion in determining whether relevant evidence should be excluded due to the danger of unfair prejudice, of confusion of the issues, or of misleading the jury under Evid.R. 403(A) and (B). Evidence that is not relevant is inadmissible. It is well established that the admission of relevant evidence rests within the sound discretion of the trial court.[9] An abuse of discretion is more than an error of law; it implies that the court acted unreasonably, arbitrarily, or unconscionably.[10] Absent an abuse of discretion that materially prejudices a party, the trial court's decision must stand.[11]

■ In their fourth assignment of error, the Brokamps contend that the trial court erred by permitting, over objection, a demonstration of the correct way to give an intramuscular injection without a proper foundation and without giving the proper safeguards to avoid undue prejudice.

In laying a foundation below, the appellees established that Barringer had been licensed as a nurse since 1986 and that he was experienced in giving injections. Further, the trial court established the proper safeguards. The trial court determined that the demonstration evidence was offered to aid the jury in understanding how a proper injection should be given, and was not to be considered as a re-creation of the injection on August 30, 1993. Also, the court properly safeguarded the admission of the evidence by stating:

"Folks, we are going to see a demonstration of the shot given here. Keep in mind that since the witness does not remember what happened, this is not a demonstration of what happened on that day. This is just a demonstration, I think, of the way that a shot is supposed to be given * * *."

Based on the instructions given by the trial court and the foundation laid by counsel, we conclude that the demonstration evidence offered here was not so inherently misleading to the jury that its admission was an abuse of discretion; therefore, we overrule the fourth assignment of error.

■ In their fifth assignment of error, the Brokamps allege that the trial court erred by "forcing [them] (over objection) to read portions of Dr. Katkin's discovery deposition as a predicate to playing Dr. Katkin's trial videotape deposition." Specifically, they contend that the fact that the evidence relied upon

---

9. See, *e.g., Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 65, 567 N.E.2d 1291, 1298; *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

10. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

11. See, *e.g., Krischbaum, supra,* at 66, 567 N.E.2d at 1298–1299.

by Katkin in his videotape deposition was introduced after his testimony did not prohibit the presentation of the videotape first in the record.

Evid.R. 703 provides, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." The Ohio Supreme Court has interpreted this rule to mean that the requirements of Evid.R. 703 are met when the expert's opinion is based in whole or in major part on facts perceived by her.[12] Ohio's rule differs from the federal rule in that Fed.R.Evid. 703 recognizes information made known to the expert before the hearing as another permissible source of facts or data. Before an expert opinion is rendered under the Ohio rule, Evid.R. 705 requires the identification of the specific facts supporting the opinion. Ohio's rule is diametrically opposed to Fed.R.Evid. 705, which does not require disclosure of the facts supporting an expert opinion.

At trial, the Brokamps sought to introduce Katkin's videotaped testimony in lieu of live testimony. After reviewing the deposition testimony, the trial court determined that Katkin did not disclose specific facts supporting his opinion pursuant to Evid.R. 705. To cure this defect, the trial court admitted parts of Katkin's earlier discovery deposition in order to establish a basis for the opinions asserted in his videotape deposition. Because Evid.R. 705 requires that the facts giving rise to an expert opinion be established *before* the opinion is rendered, we conclude that the trial court did not abuse its discretion by affording the Brokamps the opportunity to cure the defects in Katkin's videotaped testimony by introducing prior deposition evidence to establish a basis for his opinion. Accordingly, the fifth assignment of error is overruled.

In the sixth assignment of error, the Brokamps contend that the trial court erred in permitting Barringer and the other nurses to give habit testimony without a proper foundation under Evid.R. 406. We have discerned from the page references in the Brokamps' appellate brief that the other nurses to which they refer are Rosemary Chapman and Etta Williamson.

Initially, we note that the Brokamps misstate the evidence in the record as it relates to Chapman. They contend that "[n]ot one of the defendants' nurse witnesses had any personal recollection of this matter." This statement is clearly inappropriate with respect to the trial court's finding that Chapman's testimony related to her own personal knowledge of the event in question. Accordingly, we overrule this assignment as it applies to Chapman.

As to Barringer's testimony, we note that the page cited in the Brokamps' brief does not relate to an objection based on habit evidence; instead, the

12. See *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, syllabus.

objection refers merely to cumulative questions. However, we do note that some of Barringer's testimony was in fact admitted as habit evidence. Construing the assignment of error liberally, we have reviewed Barringer's testimony relating to habit evidence and find nothing in the record to demonstrate that the trial court abused its discretion by admitting the evidence.

Evid.R. 406 governs that admissibility of habit testimony:

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

To lay the proper foundation, the proponent of the evidence must show that routine in fact exists and that the stimulus for the habitual response occurred on the particular occasion.[13]

The proper foundation was laid that Barringer normally gave a shot in the outer quadrant of the buttocks, or, when a patient could not be turned to his side, in the middle portion of the thigh. And Barringer stated that there was nothing in the medical record to support the inference that he did not act pursuant to his normal custom on August 30, 1993. Accordingly, we hold that the proper foundation was laid to admit Barringer's testimony relating to his routine, and we, therefore, overrule the assignment as it relates to him.

Finally, as to the testimony of Williamson, we conclude that it was not admitted as habit evidence, because the testimony was not offered to show that she acted in conformity with her "routine practice" on August 30, 1993. In a colloquy between the court and Williamson, the court established that her testimony was unrelated to habit evidence:

"THE COURT: So you have been asked what you normally do. That's not necessarily what you did that day; is that correct?

"THE WITNESS: That's right.

"THE COURT: You may tell us what you normally do—go ahead—when you have a patient * * *."

Clearly, the Brokamps have not met their burden of showing how the aforementioned testimony was admitted as habit. Accordingly, we conclude that the trial court did not commit an error by permitting this line of testimony, and we overrule the sixth assignment of error.

---

13. See *Bollinger, Inc. v. Mayerson* (1996), 116 Ohio App.3d 702, 715, 689 N.E.2d 62, 70–71.

The Brokamps contend in their twelfth assignment of error that the trial court erred by permitting appellees to use a color representation of an injection needle at trial to show how to give an injection at a particular site, when no witness had given testimony about that process. As we have stated, determining the relevancy of evidence is within the trial court's discretion. And, after reviewing the record, we determine that there was ample testimony given throughout the trial to support the conclusion that there are several sites where an injection may be given in the leg. Therefore, the trial court did not err in determining that the injection diagram was relevant. Moreover, before the viewing of the diagram, the court properly instructed the jury that it was "not a picture of the needle as it was stuck in [Brokamp's] leg in this case," and the jury was informed that it would have to decide where the needle was actually stuck. The dissimilarity between the color representation and the particular incident in question went to the weight, not the admissibility, of evidence. Accordingly, we conclude that the court did not abuse its discretion by permitting the demonstration evidence of the injection needle. The twelfth assignment of error, therefore, is overruled.

In their sixteenth assignment of error, the Brokamps allege that the trial court erred in permitting defense counsel to use and admit as evidence medical records without a proper foundation and without appropriate safeguards. Specifically, they allege that the records contained technical and medical terminology that was not relevant and was beyond a person's understanding, and that the records were illegible.

Based on the record before us, we cannot say that the Brokamps met their burden of showing that medical records were unduly prejudicial. There is no evidence that the jurors were confused by the admission of the medical evidence, or that they were unable to read the admitted records. Accordingly, we overrule the sixteenth assignment of error.

The Brokamps allege in their seventeenth assignment of error that the trial court erred in "permitting defense counsel to elicit testimony over objection by experts in violation of the rules of evidence and the common law of Ohio." They aver that the trial court violated various evidence rules, including but not limited to Evid.R. 601(D), and denied them a fair trial.

At the outset, we note that the Brokamps' appellate brief is woefully lacking in specificity. First, it is unclear to which experts they refer. And they do not specifically delineate how they were denied a fair trial under the Rules of Evidence. Pursuant to App.R. 16(A)(7), the following requirements apply to the presentation of assignments of error:

"An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the

contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

Although this assignment falls dangerously close to violating the appellate rules, we have nonetheless reviewed the cited objections to the extent warranted by this assignment. Finding no error, we cannot say that the trial court abused its discretion in admitting the experts' testimony. Accordingly, we overrule the seventeenth assignment of error.

■ The Brokamps maintain in their eighteenth assignment of error that the trial court erred in permitting the admission of a surveillance videotape over objection, because it was incompetent and highly prejudicial. However, after reviewing the videotape and the accompanying testimony, we conclude that the trial court did not err in determining that the videotape was relevant concerning the seriousness of Daniel's alleged injuries. The videotape revealed a series of golf outings in which Daniel participated. And the investigator's testimony contained his observations of Daniel while he was playing golf. Moreover, the evidence was not unduly prejudicial because the issue of damages and injury were intricately woven into the Brokamps' claims of negligence and loss of consortium. Accordingly, the trial court did not abuse its discretion in admitting the videotape or the investigator's testimony, and the eighteenth assignment of error is overruled.

■ · Finally, the Brokamps allege that exhibit 3, which included a videotape and illustration booklet, should have been admitted into evidence because it was relevant to establish the standard of nursing care that was to be given by Mercy Hospital. No evidence was presented to establish that the videotape or booklet was in Mercy Hospital's library and available to Barringer before the incident in question. Further, there was no evidence presented at trial that any nurse had ever observed exhibit 3 as part of his or her training. As a result, the trial court did not abuse its discretion in omitting this evidence based on lack of relevancy, and we overrule the twenty-first assignment of error.

## F. Alleged Misconduct

■ In their seventh assignment of error, the Brokamps allege that the trial court erred in permitting misconduct by defense counsel throughout the trial. First, they aver that it was prejudicial error for defense counsel to adopt and persist in improper methods of impeaching the witnesses with prior deposition testimony. The Brokamps have not demonstrated how the impeachment techniques were prejudicial except to suggest that the tactics wasted time and gave the jury the impression that the witness had been untruthful. However, we point out that the objective of impeachment evidence is to attack the credibility of a

witness. Therefore, we find no merit to the argument relating to improper impeachment techniques.

Second, the Brokamps contend that it was reversible error not to control the conduct of counsel during closing arguments. Specifically, they allege that it was reversible error for the court to permit counsel to comment on the following: (1) discovery issues, and (2) the Brokamps' failure to call the older female nurse as a witness. Counsel is generally afforded broad latitude in closing argument, but when argument spills into disparagement not based on any evidence, it is improper.[14] The trial court has, within its sound discretion, the ability to determine whether there is a substantial likelihood that the jury may be misled by "[r]emarks that are not supported or warranted by the evidence and which are calculated to arouse passion or prejudice or are designed to misrepresent the evidence * * *."[15] Therefore, in order to disturb the trial court's exercise of discretion, the record must clearly demonstrate highly improper argument by counsel that tends to inflame the jury.[16]

In this case, the record does not reflect that defense counsel's comments were disparaging or that they inflamed the jury. The comment relating to the older female nurse went to the credibility of the Brokamps' eyewitness testimony. The comments relating to discovery issues, although not relevant, did not tend to inflame the jury. Further, the court's admonition stating that counsel should only refer to evidence in the record, as well as the court's jury instructions relating to admissibility of evidence, diffused any possibility of prejudicial impact. Therefore, we overrule the seventh assignment of error.

## G. Jury Instructions

The Brokamps allege that several errors occurred when the trial court instructed the jury. In their second assignment of error, they assert that the trial court erred in refusing to give a *res ipsa loquitur* jury instruction. They also allege, in their third assignment of error, that the trial court erred by failing to charge the jury on the issue of negative inference. And, in their tenth assignment of error, they contend that the trial court erred in refusing to charge the jury on punitive damages.

---

**14.** See, *e.g., Mahan v. Bethesda Hosp.* (1992), 84 Ohio App.3d 520, 527, 617 N.E.2d 714, 719; *Cusumano v. Pepsi–Cola Bottling Co.* (1967), 9 Ohio App.2d 105, 122, 38 O.O.2d 132, 143, 223 N.E.2d 477, 488.

**15.** *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 180, 547 N.E.2d 1203, 1207.

**16.** See *Mahan, supra,* at 527, 617 N.E.2d at 719.

 The doctrine of *res ipsa loquitur* permits the jury to draw an inference of negligence where (1) the instrumentality causing the injury was under the exclusive control of the defendant, and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.[17] "Generally, the doctrine of *res ipsa loquitur* is not applicable in malpractice actions in which its claimed applicability is based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results."[18] To warrant a *res ipsa loquitur* instruction in a medical malpractice case, the evidence must show that the defendants had exclusive management and control of what caused the injury, and, except where medical testimony is apparent to a layman, expert medical testimony must be given to show that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.[19]

 The second element is not present here. The evidence does not demonstrate that Daniel's injury could have been proximately caused only by the intramuscular injection, because the experts' opinions differed about whether the injection actually caused his nerve injury. For example, Dr. Fitz opined that, based on Daniel's complaints, the intramuscular injection caused the injury, while Dr. Ferree opined that the injection did not cause Daniel's injuries. *Res ipsa loquitur* may be applied only where the injury would not have occurred in the absence of negligence.[20] Because the cause of Daniel's injury was in dispute, the court's decision not to give the *res ipsa loquitur* instruction was proper. Accordingly, we overrule the second assignment of error.

The Brokamps' contention, in their third assignment of error, that the trial court erred by not giving an instruction relating to negative inference is feckless. They aver that the court should have instructed the jury as follows:

"Where evidence which would properly be part of the case is within the control of the party whose interest it would naturally be to produce it, and without

**17.** See *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66–67, 52 O.O.2d 366, 366–367, 262 N.E.2d 703, 705.

**18.** *Oberlin v. Friedman* (1965), 5 Ohio St.2d 1, 34 O.O.2d 1, 213 N.E.2d 168, paragraph three of the syllabus.

**19.** See *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 480 N.E.2d 464, syllabus; *Oberlin v. Friedman, supra; Coleman v. Mullins* (July 16, 1997), Scioto App. No. 96 CA 2462, unreported, 1997 WL 426147.

**20.** See *Coleman v. Mullins, supra.*

satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

"If a party suppresses evidence which he has been called upon to produce, it may be presumed that his opponent's claim upon such evidence is true."

The concept of negative, or adverse, inference arises where a party who has control of the evidence in question fails, without satisfactory explanation, to provide the evidence.[21] In that situation, the jury may draw an inference that would be unfavorable to that party.[22] For example, this concept applies where the party willfully suppresses evidence that, if produced, would explain that party's conduct.[23] " 'Ohio courts normally would require a strong showing of malfeasance—or at least gross neglect—before approving such a charge.' "[24]

There is no evidence of malfeasance here. The mere fact that Barringer did not chart the injection site does not warrant a conclusion of gross neglect. In fact, the jury specifically found in its answer to a special interrogatory that the medical records were not "intentionally altered, falsified, or destroyed by any agent or employee of defendant Mercy Hospital for the purpose of preventing liability for medical negligence." Thus, we overrule the third assignment of error.

Finally, the Brokamps contend that the trial court erred "in refusing to charge the jury on punitive damages when the predicates have been established." According to the record, the court did not refuse to give an instruction relating to punitive damages, but instead stated:

"I'm not refusing to give them, but I don't believe that it is appropriate until the jury determines that there is a basis for such damages and that basis being the intentional destruction of the hospital records."

The trial court's determination was not prejudicial to the Brokamps. As we have stated above, the jury responded in the negative to the special interrogatory. Where the jury's resolution of one issue obviates the need to determine a

---

21. See *Reams v. State ex rel. Favors* (1936), 53 Ohio App. 19, 22, 6 O.O. 501, 502, 4 N.E.2d 151, 152.

22. See *id.*

23. See *Vernardakis v. Thriftway, Inc.* (May 7, 1997), Hamilton App. No. C–960713, unreported, 1997 WL 224905; *Cherovsky v. St. Luke's Hosp. of Cleveland* (Dec. 14, 1995), Cuyahoga App. No. 68326, unreported, 1995 WL 739608; *Temple v. CCC Hwy., Inc.* (Mar. 28, 1991), Cuyahoga App. Nos. 58402 and 58404, unreported, 1991 WL 41751.

24. *Vernardakis v. Thriftway, Inc., supra,* quoting *Sullivan v. Gen. Motors Corp.* (N.D.Ohio 1991), 772 F.Supp. 358, 364, citing *Banks v. Canton Hardware Co.* (1952), 156 Ohio St. 453, 461, 46 O.O. 381, 385, 103 N.E.2d 568, 573.

second issue, the court's instructions on the second issue become immaterial.[25] Thus, because the jury found no evidence of intentional destruction of the medical records, the question of punitive damages relating to this issue became moot.

 Moreover, the Brokamps have also suggested, at trial and in their appellate brief, that an instruction on punitive damages was necessary because Barringer knew there was a risk of harm if he gave the shot improperly. In medical malpractice cases, punitive damages may be awarded upon the showing of "actual malice." [26] Actual malice can be placed in two general categories: first, behavior characterized by hatred, ill will, or a spirit of revenge, and, second, extremely reckless behavior revealing a conscious disregard for a great and obvious harm.[27] The record is devoid of evidence suggesting that Barringer acted with actual malice. And it is well established that the trial court need not give an instruction where there is no evidence supporting that instruction.[28] Because we find no support in the record for such an instruction, we overrule the tenth assignment of error.

## H. Directed Verdict and Judgment Notwithstanding the Verdict (JNOV)

In their thirteenth assignment of error, the Brokamps allege that the trial court erred in denying their motion for directed verdict. In their fourteenth assignment of error, they contend that the trial court erred in not granting their motion for JNOV.

In ruling upon either a motion for a directed verdict pursuant to Civ.R. 50(A) or a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B), the court is not concerned with the weight of the evidence or the credibility of the witnesses.[29] The court may grant either motion only if, after construing the evidence most strongly in favor of the nonmoving party, it finds that upon any essential issue reasonable minds could come to only one conclusion and that conclusion is adverse to that party.[30] A directed verdict is permitted where the evidence presented at trial is so one-sided that reasonable minds can come to but

---

25. See *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 466, 6 OBR 515, 518–519, 453 N.E.2d 705, 709.

26. See, *e.g.*, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph one of the syllabus.

27. See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

28. See *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135.

29. See *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus.

30. See *id.* at 347, 28 OBR at 411–412, 504 N.E.2d at 21–22.

one conclusion.[31] The same test to be applied on a motion for directed verdict is also applied to a motion for JNOV.[32]

The Brokamps argue that their directed verdict motion should have been granted because appellees were negligent. Specifically, they allege that Mercy Hospital admitted that its standard of care was breached by failing to properly document the site of the injection, and by giving an improper injection. The Brokamps, however, misstate the appellees' arguments. Neither Mercy Hospital nor Barringer ever admitted a breach of the standard of care by giving an improper injection or not documenting where the injection was given. Moreover, no evidence was presented that Mercy Hospital had a policy or procedure obliging its nurses to document the site of an injection. Therefore, as a matter of law, reasonable minds could not conclude only that appellees, *ipso facto*, had admitted to negligence. Accordingly, we conclude that the trial court did not err in denying the Brokamps' motion for directed verdict, and their thirteenth assignment of error is overruled.

The Brokamps also contend that the trial court erred by not granting their JNOV motion because the evidence presented suggested that the injection injury, which occurred in the ordinary course of events, would not have occurred in the absence of negligence. Because we have already held that the trial court did not err by refusing to give a *res ipsa loquitur* jury instruction, the trial court was warranted in denying the JNOV motion for similar reasons. Accordingly, the fourteenth assignment of error is overruled.

## I. Motion for a New Trial

In the first and fifteenth assignments of error, the Brokamps argue that the trial court erred in overruling their motion for a new trial. They maintain that the trial court erred by not granting a new trial because of alleged juror misconduct and because the verdict was against the manifest weight of the evidence. We find these arguments unpersuasive.

In moving for a new trial, the Brokamps relied on Civ.R. 59(A)(2) and (6). The granting or denial of a motion for a new trial pursuant to Civ.R. 59(A) is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.[33] As we have already stated, the term "abuse of

---

**31.** See *Shepherd v. Westlake* (1991), 76 Ohio App.3d 3, 10, 600 N.E.2d 1095, 1099.

**32.** See *Posin v. A. B. C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

**33.** See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus.

discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.[34]

██ The Brokamps' allegation of juror misconduct, in their first assignment, is the most serious. Specifically, they maintain that one of the jurors failed to truthfully disclose his personal opinions during voir dire, and that this omission prejudicially affected their constitutional rights to a fair trial and an impartial jury. This allegation was presented to the court by proffer from the Brokamps after the verdict had been rendered. Two jurors were then called before the court and questioned about an alleged improper comment.

Evid.R. 606(B) governs the type of evidence that may be considered when a court inquires into the validity of a verdict. This evidentiary rule embodies the *aliunde* rule, which requires the introduction of evidence from a competent source other than a juror to impeach a jury verdict.[35] The jury's verdict may not be impeached by evidence from a member of the jury unless a foundation for the introduction of such evidence is first laid from some other source.[36] Here, the only foundation provided was a proffer by the Brokamps' counsel, who did not have firsthand knowledge of the jury deliberations. Such a proffer did not constitute evidence *aliunde*.[37] Because there was insufficient evidence *aliunde*, we conclude that the trial court did not abuse its discretion in denying the motion for new trial.

The Brokamps also argue, in their fifteenth assignment of error, that the trial court erred by refusing to grant a new trial under Civ.R. 59(A)(6) on the ground that the judgment was not sustained by the weight of the evidence. In assessing whether a trial court has abused its discretion under Civ.R. 59(A)(6), we must keep in mind that the trial court must do the following:

"[W]eigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." [38]

---

34. See *id.* at 87, 52 O.O.2d at 378–379, 262 N.E.2d at 689.

35. See, *e.g., State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54, 61; *State v. Doan* (Sept. 29, 1995), Hamilton App. No. C–940330, unreported, 1995 WL 577524.

36. See *State v. Schiebel, supra.*

37. See, *e.g., Schiebel, supra; State v. Doan, supra.*

38. *Rohde, supra,* at paragraph three of the syllabus.

■ Thus, we will not reverse on manifest-weight-of-the-evidence grounds if a judgment is supported by some competent, credible evidence.

■ After reviewing the record, we conclude that the evidence was sufficient to warrant a denial of the motions. Competent, credible evidence was adduced at trial to support a verdict in appellees' favor. The jury could reasonably have concluded that Barringer did not breach his duty of care and did not improperly administer the intramuscular injection. Furthermore, the jury could have reasonably concluded that Daniel Brokamp was not injured as a result of the injection given by Barringer. Credibility was an issue to be resolved by the trier of fact.[39] Thus, because there was competent, credible evidence presented at trial to support a verdict in appellees' favor, we conclude that the jury's verdict was not against the manifest weight of the evidence. Accordingly, we overrule the first and fifteenth assignments of error

Finally, the Brokamps argue in their eleventh assignment of error that the trial court demonstrated an undue prejudice against them. After reviewing the record, we cannot say that the trial court demonstrated undue prejudice. Accordingly, this assignment of error is overruled.

### IV

### Conclusion

In sum, we have overruled all twenty-one assignments of error. We conclude that the trial court properly entered judgment in favor of Mercy Hospital Anderson and James Barringer. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

GORMAN and PAINTER, JJ., concur.

---

**39.** See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1277.