JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Pro se plaintiff Bertha Marshall appeals from the judgment of the probate court entered in the will contest action brought by Marshall and other siblings of the decedent Paul Scalf. Plaintiff and the other siblings sought to set aside a will naming decedent's nephew Eric Scalf as the primary beneficiary and to set aside a joint and survivorship quitclaim deed placing the decedent's property in the joint names of the decedent and Eric Scalf. For the reasons set forth below, we modify the judgment of the trial court to strike the portion which indicates that the quitclaim deed is valid, and we hold that the real property must pass via the decedent's estate. We otherwise affirm the judgment of the trial court, and remand for further proceedings consistent with this opinion.
 {¶ 2} This action concerns the estate of the decedent who was legally blind[1] and is purported to have signed a number of documents shortly before his death in February 2005. The record reveals that in 1984 the decedent executed a last will and testament which listed his primary beneficiaries as his mother and sister, Emmagene, who was also blind. In the event that his sister and mother predeceased him, then the estate would pass to his remaining siblings, including plaintiff Bertha Mae Marshall. By 2003, both Emmagene and decedent's mother had died. *Page 4 
 {¶ 3} In January 2003, the decedent gave his pastor, Paula Meader Connor of Trinity Lutheran Church, a general power of attorney. Also in 2003, defendant Eric Scalf and his then-girlfriend Marie Latessa, and their children, moved into the decedent's home. Plaintiffs' witnesses maintained that Eric was to care for the decedent and pay monthly rent but failed to do so, and that Eric was to purchase the property. According to defendants' witnesses, Eric cared for the decedent and the property, and made some rental payments, and the decedent wanted Eric to inherit the property.
 {¶ 4} By August 2004, the decedent became ill from the complications of diabetes, respiratory and heart disease. He was hospitalized at Lakewood Hospital where he remained for two months.
 {¶ 5} In October, 2004, the decedent informed Pastor Meader Connor that he wished to leave his estate to defendant Eric Scalf. Pastor Meader Connor had attorney David Stadler prepare a will. According to Meader Connor, the decedent wanted to give his property to Eric. This document was also drafted by attorney Stadler and witnessed by two other members of the church, Robert Lugaville, and David Connor. The signing was videotaped. The video was given to plaintiff Marshall. Meader Connor retained copies of the will as did Stadler.
 {¶ 6} Plaintiffs insisted that decedent was adamant that Eric was to purchase rather than inherit the property, and informed them that the will did not manifest his *Page 5 
true intentions. According to plaintiffs' witness, Joanne Soeder, another sibling of the decedent, the decedent tore apart the October 2004 will.
 {¶ 7} Marshall also propounded a Codicil to the decedent's 1984 will which was executed in November 2004. This document named the remaining siblings as beneficiaries and provided for various individual bequests. Plaintiffs admitted, however, that Bertha Marshall forged a document entitled "Additional Instructions to Bertha Marshall, my Executrix, Regarding my Last Will and Testament," which contained additional specific bequests.
 {¶ 8} Plaintiffs next complained that defendants attempted to obtain life insurance on the decedent's life, and falsely informed him that he was simply obtaining medical insurance. The insurance application listed Eric as the primary beneficiary and Marie as the secondary beneficiary on a $75,000 policy. Due to numerous omissions concerning the decedent's health, however, the application was denied. Eric denied any participation in the insurance application and insisted that the decedent wanted this policy simply to pay for burial expenses.
 {¶ 9} Defendants propounded a will dated December 12, 2004, in which the decedent purportedly bequeathed the estate to Eric, and to Marie Latessa in the event that Eric was also deceased. The document was witnessed by Marie Latessa's half brother and his girlfriend. It also contains a notarization from Deanna Burke, Latessa's half sister. Although Burke's notary seal indicated that Paul personally appeared before her, she admitted that she actually just viewed portions *Page 6 
of a videotape which depicted the decedent and the witnesses signing the document, and she also admitted that the videotape is now missing.
 {¶ 10} Plaintiffs insisted that the decedent lacked testamentary capacity at the time this will was made, and/or that the defendants exerted undue influence as it was executed at the hospital during his last illness. Plaintiffs presented nursing notes dated December 7, 2004 which indicated that the decedent's activity tolerance was for a duration of only 2 minutes, that 90 percent of his speech was unintelligible, and that he was not alert and oriented. Plaintiffs also maintained that the decedent was unconscious and sedated following dialysis, that he received dialysis on December 11, 2004. Marshall also testified that when she visited Paul on December 12, 2004, he appeared to be in great pain and could not talk.
 {¶ 11} Defendants also propounded a quitclaim deed which the decedent purportedly conveyed his home to himself and Eric, with joint and survivorship benefits. This document was likewise witnessed by Marie Latessa's half brother and his girlfriend, and also contains a notarization from Deanna Burke, which falsely indicated that the decedent personally appeared before her and signed the deed in her presence. Burke again claimed that she viewed portions of a videotape of the signing and notarized the document based upon this videotape, which is also missing.
 {¶ 12} Finally, defendants propounded a power of attorney which the decedent granted to Ann Latessa on December 30, 2004. In opposition, plaintiffs propounded *Page 7 
Revocation of Durable Power of Attorney in which the decedent indicated that he did not authorize Ann Latessa to act on his behalf and that Pastor Meader Connor had the sole valid power of attorney.
 {¶ 13} The case was submitted to the jury, and the jury concluded that the December 12, 2004 will and joint and survivorship quitclaim deed propounded by defendants were valid. Marshall[2] now appeals and assigns sixteen errors for our review.
 {¶ 14} For her first assignment of error, Marshall complains that the trial court erred in denying plaintiffs' motion for default judgment.
 {¶ 15} Civ.R. 12(A)(1) provides that a defendant must answer within twenty-eight days after service of the summons and complaint. A trial court's decision to permit a tardy filing will not be disturbed, however, absent an abuse of discretion. State ex rel. Lindenschmidt v.Butler Cty. Bd. of Commrs. (1995), 72 Ohio St.3d 464, 465, 1995-Ohio-49,650 N.E.2d 1343. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. *Page 8 
 {¶ 16} In this matter, the answer was due on September 7, 2005. On September 14, 2005, plaintiffs filed a motion for default judgment. On September 15, 2005, the trial court granted defendant leave to file the answer instanter. This is a relatively short delay, and the record does not suggest that the trial court abused its discretion.
 {¶ 17} For her second, eleventh, fourteenth and fifteenth assignments of error, Marshall complains that the trial court erred by failing to declare the December 12, 2004 documents invalid as a matter of law, in light of the false notary acknowledgments. These assignments of error are well-taken in part.
 {¶ 18} As to the will, we note that wills do not require notary acknowledgments. See R.C. 2107.03. Accordingly, the false notary acknowledgment does not deprive the will of an essential element of validity, but rather, was a factor to be considered by the jury in making its determination.
 {¶ 19} As to the deed, a proper notarization is required. R.C.5301.01. R.C. 147.53 sets forth the requirements for taking an acknowledgment as follows:
 {¶ 20} "The person taking an acknowledgment shall certify that:
 {¶ 21} "(A) The person acknowledging appeared before him and acknowledged he executed the instrument;
 {¶ 22} "(B) The person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory *Page 9 
evidence that the person acknowledging was the person described in and who executed the instrument."
 {¶ 23} In this instance, Burke admitted that her acknowledgment that the decedent signed the deed in her presence was false; she stated that she acknowledged the document after viewing the now missing videotape. Accordingly, upon failure of the acknowledgment, the deed is not valid and the property is required to pass through the decedent's estate.
 {¶ 24} With regard to the prejudice that resulted from the jury's consideration of this document, a claim set forth in Marshall's seventh assignment of error, we would note that ordinarily, falsely acknowledged documents should not be considered by the jury and the jury's consideration of such documents absent strict limitations from the trial court can be prejudicial. In this particular instance, however, we cannot say that prejudice occurred, as Marshall admitted to forging the "Additional Instructions to Bertha Marshall, my Executrix, Regarding my Last Will and Testament," which contained additional specific bequests. This falsification could certainly be considered by the jury in this matter. Thus, the conduct of both plaintiffs and defendants was questionable. The only independent evidence, the testimony of Pastor Meader Connor, supports defendants' contention that the decedent wanted Eric to inherit his estate. Therefore after viewing the case in total, we are not convinced that Marshall suffered prejudice as a result of the jury's consideration of the deed. *Page 10 
 {¶ 25} For her third assignment of error, Marshall complains that her trial attorney did not seek to have the court declare the December 12, 2004 documents declared invalid. This claim is not supported in the record, and, in any event, is now moot in light of our disposition of the second, eleventh, fourteenth and fifteenth assignments of error.
 {¶ 26} Within her fourth, fifth, sixth, seventh and twelfth assignments of error, Marshall complains that her trial counsel failed to adequately represent her. There is no constitutional or statutory right to the effective assistance of counsel in a civil case, see, e.g.,Friedman v. Arizona (9th Cir. 1990), 912 F.2d 328, 333; Glick v.Henderson (8th Cir. 1988), 855 F.2d 536, 541. Accordingly, a litigant in a civil proceeding may not attack an adverse judgment on the grounds of ineffective assistance of trial counsel. Friedman v. Arizona. These claims are therefore rejected.
 {¶ 27} For her eighth and thirteenth assignments of error, Marshall complains about the conduct of the defendants' attorney during direct and cross-examination.
 {¶ 28} The scope of voir dire, cross-examination, and closing argument are, in the first instance, within the discretion of the trial court. See Evid.R. 611; see, also, Brokamp v. Mercy Hosp. (1999),132 Ohio App.3d 850, 862, 868, 726 N.E.2d 594. In this matter, the litigants had an experienced trial judge and he did not abuse his discretion in connection with the conduct of these proceedings. These claims are overruled. *Page 11 
 {¶ 29} For her ninth assignment of error, Marshall complains that the trial court erred in ordering her and witness Cindy Haefele to remain in the courtroom during a break in the proceedings. Again, the trial court is vested with discretion in the manner by which they control the courtroom, and those decisions will not be reversed absent an abuse of that discretion. State v. Finkes, Franklin App. No. 01AP-310, 2002-Ohio-1439. We find no abuse of discretion. For her tenth assignment of error, Marshall complains that the trial court erred in ordering Pastor Meader Connor to appear for testimony.
 {¶ 30} R.C. 2317.21 provides in relevant part:
 {¶ 31} "When a witness, * * * fails to obey a subpoena personally served, the court or officer, before whom his attendance is required, may issue to the sheriff or a constable of the county, a writ of attachment, commanding him to arrest and bring the person named in the writ before such court or officer at the time and place the writ fixes, to give his testimony and answer for the contempt. * * *"
 {¶ 32} Accordingly, we find no abuse of discretion.
 {¶ 33} For her sixteenth assignment of error, Marshall complains that the trial court erred in instructing the jury regarding the issue of whether the decedent revoked the October 2004 will, which was admitted in its torn pieces, by tearing, cancelling, or obliterating it. Pursuant to the provisions of R.C. 2107.33, we find no error. *Page 12 
 {¶ 34} In accordance with all of the foregoing, the portion of the judgment of the trial court which determined that the deed was valid is hereby reversed and the property must transfer via the decedent's estate. The judgment of the trial court is otherwise affirmed, but remanded in part for further proceedings consistent with this opinion.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR
[1] In the proceedings below, neither party briefed the significance of the decedent's blindness in connection with the execution of the documents or requested any special instructions related to this issue.
[2] As a pro se litigant, Marshall does not have the authority to represent other litigants. We shall therefore consider the assignments of error solely in relation to her own interests as a beneficiary under the 1984 will. Cf. Federal Home Loan v. Dooley (Nov. 5, 1984), Montgomery App. No. 8789. *Page 1