OBERLIN, APPELLEE, *v*. FRIEDMAN, APPELLANT.
[Cite as Oberlin v. Friedman, 5 Ohio St. 2d 1.]

2

(No. 39431—Decided December 29, 1965.)

4

*Messrs. Marshall, Melhorn, Bloch & Belt* and *Mr. Wilbur C. Jacobs,* for appellee.

*Messrs. Shumaker, Loop & Kendrick, Mr. Charles W. Peckinpaugh, Jr.,* and *Mr. Robert G. Clayton, Jr.,* for appellant.

TAFT, C. J.   The Court of Appeals' determination that the Common Pleas Court erred in giving the first special charge and in its general charge is not supported by the reason which it gave for that determination.   That reason is based on the expressed premise that there was evidence "that the defendant followed the usual practice and custom in handling of the two substances on the same tray."   There was no such evidence. Plaintiff did offer evidence tending to prove that the custom and practice in hospitals was to use only colored alcohol where an anesthetic was being administered.   Defendant offered no evidence to the contrary but did testify that the hospital furnished him with and he used uncolored alcohol.

Plaintiff contends that, instead of the words "skill, care and diligence" generally used in defining the measure of a physician's duty, only the words "skill and care" were used in special charge No. 1 and that, as held in *Dietsch, a Minor,* v. *Mayberry,* 70 Ohio App. 527, 47 N. E. 2d 404, it was error to omit the word "diligence."   In our opinion, the addition of the

word "diligence" in special charge No. 1 would cover nothing that would not be described by the word "care."

Plaintiff argues that, although the first sentence of special charge No. 1 might be proper in an action against a surgeon, it would not in an action against a physician employed only to administer an anesthetic. We fail to comprehend why not. The only reasonable basis for such a contention is that, although an operation may be either successful or unsuccessful in the absence of negligence, the administering of an anesthetic is always successful in the absence of negligence so that the anesthesiologist should be a guarantor of his treatment. Such a reason is not medically supportable.

Plaintiff complains because the phrase "in the light of the state of medical and surgical science at the time of treatment" is omitted both from special charge No. 1 and from the general charge. Although some charges with respect to the duty of a physician do contain this phrase, we do not believe that its omission from special charge No. 1 and from the general charge made them erroneous. Such a provision would necessarily be implied from the words actually used in that special charge.

Plaintiff complains also of the use in the foregoing quoted portion of the general charge of the word "only" and of the words "otherwise not." The use of those words did not make this charge inaccurate. For example, if a defendant's liability is dependent on his failure to exercise ordinary care, it is not inaccurate to say that his duty is to use ordinary care or that his duty is to use only ordinary care; and it is not inaccurate to say that he is liable for failure to use such care, but otherwise not.

The most that can be said against use of these words is that they might *possibly* be considered as having a tendency to mislead the jury. Cf. *Reep* v. *Greyhound Corp.* (1960), 171 Ohio St. 199, 168 N. E. 2d 494 (cause "in slightest degree"). For this reason, the trial court might have been required to revise this part of its charge if the matter had been called to its attention at the time. Plaintiff did not do this.

Plaintiff complains further that the special and general charges omitted in several respects to state the full extent of

defendant's responsibility and were therefore affirmatively erroneous on the facts in evidence. To so hold would amount to holding that any error of omission in a charge is an error of commission. This would amount to a departure from our holding that, in order to be availed of as grounds for reversal of a judgment, errors of omission must generally be called to the trial court's attention at a time when they could have been corrected. *Rhoades* v. *City of Cleveland* (1952), 157 Ohio St. 107, 105 N. E. 2d 2.

Plaintiff not only failed to call to the trial court's attention any of the claimed errors of which he now complains but, when the trial court asked at the end of its charge whether there was "anything further" that the parties "want charged," plaintiff's counsel stated: "Not from the plaintiff."

By its judgment, the Court of Appeals determined that there were no prejudicial errors except for the giving of special charge No. 1 and the portion of the general charge quoted above. However, plaintiff contends that, even if we should disagree (as we do) with the reasons given by the Court of Appeals for its judgment of reversal, we should affirm that judgment because of other errors of the trial court in giving special charges 2, 3 and 4, in its charge on *res ipsa loquitur,* in its charge on proximate cause, and in its admission of certain evidence.

In our opinion, special charge 2 would tend to mislead the jury in some *res ipsa loquitur* cases. That charge reads:

"I instruct you that negligence on the part of a physician in his care and treatment of a patient consists in his doing some specific act or acts which he should not have done which proximately caused the patient's injury, and the fact that his patient is injured following care and treatment does not raise a presumption that the condition was caused by the negligence of the physician.

"In this case, therefore, negligence on the part of Dr. Friedman would consist of his doing some specific act or acts which he should not have done or in his omitting to do some specific act or acts which he should have done which proximately caused Mr. Oberlin's paralysis, and the fact that Mr. Oberlin was paralyzed following his care and treatment by Dr. Fried-

man does not raise a presumption that the condition was caused by the negligence of Dr. Friedman.''

This charge was apparently based on paragraph seven of the syllabus of *Ault* v. *Hall* (1928), 119 Ohio St. 422, 164 N. E. 518, 60 A. L. R. 128. We are of the opinion that, without some qualification, it would be misleading in most cases where the doctrine of *res ipsa loquitur* was applicable. Under the doctrine of *res ipsa loquitur*, a jury may often properly infer that a defendant was negligent without determining that any particular or specific act or failure to act of such defendant was negligence.

Although it stated no reason for rejecting this claim of error, the Court of Appeals probably did so because of its conclusion that the doctrine of *res ipsa loquitur* was not applicable in the instant case. It had so stated in rejecting plaintiff's claim of error in the charge on *res ipsa loquitur*.

The reason given by the Court of Appeals for holding the doctrine of *res ipsa loquitur* not applicable was that a plaintiff cannot, as did the plaintiff in the instant case, plead and offer evidence to prove specific acts of negligence and at the same time rely upon the doctrine of *res ipsa loquitur*. The statement in paragraph one of the syllabus of *Winslow* v. *Ohio Bus Line Co.* (1947), 148 Ohio St. 101, 73 N. E. 2d 504, does support such a conclusion. However, even a casual reading of the report of the case indicates that that statement represents dicta. The decision of this court there was that defendant's negligence was a proximate cause of plaintiff's injuries as a matter of law. Hence, there was no occasion whatever for resorting to the doctrine of *res ipsa loquitur*.

In our opinion, if the allegations of the petition and the proof in support thereof call for its application, the doctrine of *res ipsa loquitur* should be applied even though the petition alleges also and evidence is offered to prove specific acts of negligence. See *Fink* v. *New York Central Rd. Co.* (1944), 144 Ohio St. 1, 7, 56 N. E. 2d 456.

Hence, we disagree with the reasons given by the Court of Appeals for holding that this was not a *res ipsa loquitur* case.

It is, therefore, necessary to determine to what extent the doctrine of *res ipsa loquitur* is applicable in the instant case.

There are no decisions by this court holding directly that the doctrine of *res ipsa loquitur* may or may not be applicable in a malpractice case. See the Court of Appeals cases of *Blackman, Admr.,* v. *Zeligs* (1951), 90 Ohio App. 304, 103 N. E. 2d 13; *Sieling* v. *Mahrer* (1953), 71 Ohio Law Abs. 571, 113 N. E. 2d 373; *Modrzynski* v. *Lust* (1949), 55 Ohio Law Abs. 106, 88 N. E. 2d 76; and *Shutts* v. *Siehl* (1959), 109 Ohio App. 145, 164 N. E. 2d 443, refusing to apply it. But cf. *Bradshaw* v. *Wilson* (1950), 87 Ohio App. 319, 94 N. E. 2d 706. The statement in paragraph eight of the syllabus of *Ault* v. *Hall, supra* (119 Ohio St. 422) ("in the performance of a surgical operation when an incision is made in the abdomen and where surgical sponges are used, the removal of such sponges is a part of the operation itself, and a failure to remove such sponges before the incision is finally closed is prima facie evidence of negligence") tends to indicate that *res ipsa loquitur* was applicable in that case. However, paragraph seven of the syllabus and what was said at page 429 in the opinion with respect to a charge based on paragraph one of the syllabus tend to negative such a conclusion. It may be noted that there is apparently nothing in the opinion which relates to what was said in paragraph eight of the syllabus.

Outside Ohio, some authorities apparently hold that the doctrine of *res ipsa loquitur* is never applicable in malpractice cases. Annotation "Physicians and Surgeons: res ipsa loquitur, or presumption or inference of negligence, in malpractice cases," 82 A. L. R. 2d 1262, 1277, supplementing annotation, 162 A. L. R. 1265, 1269. Furthermore, it is quite generally held that the doctrine of *res ipsa loquitur* is not applicable in malpractice actions in which its claimed applicability is based solely upon the fact that the treatment was unsuccessful or terminated with poor or unfortunate results. See Annotation, 82 A. L. R. 2d 1262, 1269, 1293, supplementing annotation, 162 A. L. R. 1265, 1267, 1281. (Such a holding was recently made in California which has been more liberal than any other jurisdiction in applying the doctrine of *res ipsa loquitur* in medical malpractice cases. *Siverson* v. *Weber* [1962], 57 Cal. 2d 834, 372 P. 2d 97.)

Some courts have applied the doctrine of *res ipsa loquitur* with respect to certain specific acts or omissions of physicians or surgeons, such as the leaving of a foreign object in the body of a patient. See annotation, 82 A. L. R. 2d 1262, 1270, 1308, supplementing annotation, 162 A. L. R. 1265, 1267, 1291.

In deciding this case, it is unnecessary for this court to determine whether a *res ipsa loquitur* case would be presented if the jury found that defendant injected alcohol instead of xylocaine into plaintiff. We will assume that such a case might be a *res ipsa loquitur* case. See paragraph eight of the syllabus of *Ault* v. *Hall, supra* (119 Ohio St. 422).

However, it is elementary that the doctrine of *res ipsa loquitur* is applicable only where the instrumentality causing the injury was under the exclusive management and control of the defendant. *Soltz* v. *Colony Recreation Center* (1949), 151 Ohio St. 503, 87 N. E. 2d 167; *Huggins* v. *John Morrell & Co.* (1964), 176 Ohio St. 171, 198 N. E. 2d 448.

Thus, in the instant case, the question immediately arises as to what "instrumentality" caused plaintiff's injuries. It may have been either (1) what defendant injected into plaintiff, (2) something else which defendant or the nurse under his control did or failed to do, (3) something which the surgeon did or failed to do in performing the operation, or (4) physical frailties or natural reactions of plaintiff not induced by, or not undiscovered because of, any negligence of anyone.

Defendant may have been in control of (1) and (2) but was certainly not in control of (3) and (4). The only evidence to support either (1) or (2) as a cause was the testimony of plaintiff's expert that plaintiff's condition was caused by and could only have been caused by an injection of 20 c. c. of alcohol instead of xylocaine. There was much expert evidence tending to prove that this could not have been the cause but that the cause was a physical reaction of the plaintiff to the anesthesia or surgery that was not related to any negligence of either the anesthetist or the surgeon.

Unless the jury believed plaintiff's expert and found that the only cause of plaintiff's injuries was the injection by defendant of alcohol instead of xylocaine, it could not possibly

10

have found defendant in exclusive control of any instrumentality that caused plaintiff's injuries, and the doctrine of *res ipsa loquitur* would not be applicable. If the doctrine was applicable, it would have been applicable only to the extent of permitting the jury to draw an inference of defendant's negligence from the fact that defendant injected the alcohol instead of the xylocaine. Such injection by defendant would be "his doing some specific act * * * which he should not have done." Hence, it is apparent that, if the jury found the fact it would have had to find in order to have the doctrine of *res ipsa loquitur* applicable, special charge No. 2 would represent no barrier whatever to plaintiff's recovery. On the other hand, if its finding made the doctrine of *res ipsa loquitur* not applicable, then this special charge would admittedly be proper.

Special charge No. 4 reads:

"I instruct you that it is the law that in a case of the nature now before the court a presumption of negligence is never indulged from the mere fact of injury, but the burden of proof is on the plaintiff to prove the negligence of the defendant and that such negligence is the proximate cause of injury or damage.

"In this case, therefore, it may not be presumed that Dr. Friedman was negligent from the mere fact that Mr. Oberlin was paralyzed following Dr. Friedman's care and treatment of Mr. Oberlin, but the burden of proof is on Mr. Oberlin to prove that Dr. Friedman was negligent in his care and treatment of him and that that negligence was the proximate cause of Mr. Oberlin's condition."

This charge was apparently based on paragraph one of the syllabus of *Ault* v. *Hall, supra* (119 Ohio St. 422). The opinion in that case (page 429) recognizes that "this very general statement would not apply where the doctrine of *res ipsa loquitur* is involved."

This charge is a correct statement of the law. However, as plaintiff points out, such a charge as to no "presumption" might mislead a jury in a *res ipsa loquitur* case to believe it had no right even to infer negligence. However, any such tendency to mislead, which this special charge may have had, was com-

pletely eliminated by the following warning of the trial judge immediately after special charge No. 4 was given:

"Gentlemen, in view of the nature of these special requests, I now charge you to be discreet and not confuse presumption and inference in your respective arguments. If you do, the court will be required to stop you and make the necessary correction. Because the terms are not synonymous in any way, shape or form."

Furthermore, in his general charge to the jury the trial judge defined an inference and later carefully instructed the jury concerning the difference between an inference and a presumption.

Plaintiff complains about the court's general charge on *res ipsa loquitur*. This charge did permit the jury to apply the doctrine of *res ipsa loquitur* to a greater extent than proper on the facts of the instant case. This error might have been prejudicial to the defendant but it could only have been beneficial to plaintiff. The same may be said with regard to every other substantial complaint by plaintiff with respect to this part of the charge.

The contentions of plaintiff as to special charge No. 3, as to the part of the general charge relating to proximate cause, and as to the admission of evidence do not have sufficient substance to justify any discussion.

There is undisputed evidence in the instant case that there was a custom in hospitals to use colored alcohol in operating rooms in order to prevent its confusion with other uncolored substances such as xylocaine. Defendant admittedly used uncolored alcohol. Thus, in effect, the special charges and the general charge in the instant case directed the jury to render a verdict for plaintiff, if it found that defendant injected plaintiff with alcohol instead of xylocaine. The verdict for defendant indicates that the jury disbelieved the testimony of plaintiff's expert witness and found that defendant did not inject plaintiff with alcohol instead of xylocaine. The judgment of the Court of Appeals affirmatively indicates that it did not consider that verdict against the weight of the evidence.

The judgment of the Court of Appeals is, therefore, re-

versed and the judgment of the Common Pleas Court is affirmed.

*Judgment reversed.*

MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

ZIMMERMAN, J., concurs in paragraphs one, three and four of the syllabus and in the judgment.

HERBERT, J., dissents.