OPINION
Appellant, Jo'el Horton-Thomas, is appealing the judgment of the Montgomery County Common Pleas Court in denying her motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
Ms. Jo'el Horton-Thomas went to Dr. Soma Avva for a reduction mammaplasty, otherwise known as breast reduction surgery, in 1997. At age 31, Ms. Horton-Thomas sought a breast reduction surgery because her breasts were approximately a 38G and caused her to suffer back pain and pain in her shoulders and arms. Ms. Horton-Thomas' first appointment with Avva occurred on May 29, 1997. According to Ms. Horton-Thomas, she watched a brief video on breast reduction surgery and had picked up a pamphlet in the lobby with information about the surgery. After watching the video, Ms. Horton-Thomas met with Dr. Avva, who performed an examination of her breasts and determined that she had a condition known as gigantomastia, resulting in extremely large breasts. Dr. Avva testified that at this consultation he reviewed a checklist with Ms. Horton-Thomas, explaining the two possible surgery techniques: the free nipple graft and the inferior pedicle technique. However, Ms. Horton-Thomas asserts that she was never specifically informed of two different techniques. After the first consultation, Dr. Avva determined that he would perform a free nipple graft on Horton-Thomas to reduce the size of her breasts, though he made no notation of this in his charts.
Dr. Avva routinely performed breast reduction surgeries and predominantly utilized one of two surgical techniques, the free nipple graft or the inferior pedicle technique. In the free nipple graft, the nipples are removed and the size of the breast is cut down similar to an amputation and then the nipples are reattached in an appropriate position for the new breasts. In the inferior pedicle technique, the nipples are left attached to the breasts and fat and breast tissue are removed from the sides and bottom of the breast, leaving the nipple and the nerves and blood vessels leading to the nipple intact. A risk of both surgical techniques is fat necrosis, where the blood is blocked and cannot reach some of the fat in the breast. This fat that lacks blood flow begins to die and must be cut off in order to prevent gangrene. Fat necrosis often lasts approximately three months and leaves large unattractive scars. Although the risk of fat necrosis is small in both procedures, the risk is slightly higher with the inferior pedicle technique.
On August 1, 1997, Ms. Horton-Thomas visited Dr. Avva for a preoperative exam and for surgical markings. At this visit, Ms. Horton-Thomas expressed some concern about having her nipples removed and the inevitable consequences of loss of sensation, erectile function, and inability to breast feed. Dr. Avva testified that he told her of the alternative of the inferior pedicle technique, which would allow her to maintain sensation in her nipple, but that the risk of complications would be greater. According to Dr. Avva, Ms. Horton-Thomas chose to proceed with the inferior pedicle technique. On August 4, 1997, Ms. Horton-Thomas underwent surgery by Dr. Avva at Good Samaritan Hospital using the inferior pedicle technique. After her discharge from the hospital, Ms. Horton-Thomas developed fat necrosis in her breasts and had to undergo several debridement procedures.
Ms. Horton-Thomas initiated this action[1] against Dr. Avva on August 31, 1999 for injuries allegedly sustained secondary to the breast reduction surgery he performed. In April 2000, a jury trial was held on three claims by Ms. Horton-Thomas: 1) whether there was informed consent for the surgery, 2) whether Dr. Avva was negligent in using the inferior pedicle technique instead of a free nipple graft technique, and 3) whether Ms. Horton-Thomas' claims deprived consortium to her minor son. The jury rendered a verdict in favor of Dr. Avva. The trial court denied Ms. Horton-Thomas' motion for judgment notwithstanding the verdict or, in the alternative, a new trial on May 23, 2000. From these denials, Ms. Horton-Thomas filed this timely appeal.
Ms. Horton-Thomas raises the following assignments of error:
 1. THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT AS A MATTER OF LAW TO SUPPORT A DIRECTED VERDICT IN FAVOR OF PLAINTIFFS AND AGAINST THE APPELLEE FOR FAILURE TO DISCLOSE A MATERIAL ALTERNATIVE TO THE INFERIOR PEDICLE TECHNIQUE.
 2. THE VERDICT FOR APPELLEE THAT THE FAILURE TO DISCLOSE A MATERIAL ALTERNATIVE TO THE INFERIOR PEDICLE TECHNIQUE DID NOT PROXIMATELY CAUSE INJURY TO THE PLAINTIFF SHOULD BE REVERSED BECAUSE THE JURY WAS CONFUSED BY THE COURT'S NEW JURY INSTRUCTION GIVEN OVER PLAINTIFF'S COUNSEL'S OBJECTION.
 3. THE TRIAL COURT ERRED IN FAILING TO GIVE RES IPSA LOQUITUR INSTRUCTIONS TO THE JURY.
 4. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE SURPRISE TESTIMONY OF DR. ARTZ THAT VIOLATED THE FINAL PRETRIAL ORDER SUBMITTED BY APPELLANT'S COUNSEL AND APPELLEE'S COUNSEL AND EVIDENCE RULE 705.
 5. THE TRIAL COURT ERRED IN DENYING A NEW TRIAL BASED ON THE PREJUDICIAL, SURPRISE TESTIMONY FROM APPELLEE'S EXPERT WITNESS DR. SHELDON ARTZ AND THE MISCONDUCT OF APPELLEE'S COUNSEL AND THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL IN ACCORDANCE WITH CIVIL RULE(S) 59 (A)(2), (3), (6), (7) AND OR (9).
Appellant's first assignment of error:
Ms. Horton-Thomas argues that the trial court should have ordered a judgment notwithstanding the verdict in her favor on the issue of Dr. Avva's alleged failure to disclose a material alternative to the inferior pedicle technique. We disagree.
In order to determine if the trial court erred by overruling a motion for judgment notwithstanding the verdict, the appellate court must examine whether the evidence and admissions, when construed most strongly in favor of the nonmoving party, were such that reasonable minds could have reached a conclusion in favor of the nonmoving party. O'Day v.Webb (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424; Sheidler v. Norfolk W. Ry. (1999), 132 Ohio App.3d 462; Tulloh v. Goodyear Atomic Corp.
(1994), 93 Ohio App.3d 740, 746-747. When substantial evidence exists to support the nonmoving party's side of the case, upon which reasonable minds may reach different conclusions, the motion should be denied. Posinv. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427; Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124.
Ms. Horton-Thomas asserts that Dr. Avva's office records and expert witness testimony establish that Dr. Avva failed to disclose a material alternative to the inferior pedicle technique. However at trial, Ms. Horton-Thomas testified that she was aware that a technique existed wherein the nipples were removed and she was aware when she went in for the surgery on August 4, 1997 that this was not the procedure she was having done. (Tr. 216-17). Further, Ms. Horton-Thomas testified that she reviewed a video and a brochure from Dr. Avva's office which stated that sometimes women with very large breasts have to have their nipples removed and relocated. (Tr. 142, 151, 201; Plaintiff's exhibit 10; Defendant's exhibit C). Additionally, Ms. Horton-Thomas testified that she had a discussion with Dr. Avva on August 1, 1997 wherein she expressed her reluctance at having her breast nipples removed and was aware that she could still choose not to undergo the procedure. (Tr. 211, 218-19).
Additionally, Dr. Avva testified that he informed Ms. Horton-Thomas on both May 29th and August 1st of 1997 of the two separate procedures and the possible complications. (Tr. 95, 562-63). Specifically, Dr. Avva testified that on August 1, 1997, when Ms. Horton-Thomas expressed a desire not to have her nipples amputated, he told her that he could do the inferior pedicle technique on her but that the risk of complications would be greater than with the free nipple graft technique. (Tr. 132, 562-63). Also, Dr. Avva testified that on May 29, 1997, he went over a checklist with Ms. Horton-Thomas, which was in her chart and had appropriate checkmarks on it, explaining in detail the two surgical techniques and the potential for fat necrosis. Moreover, the brochure which Ms. Horton-Thomas testified that she received at Dr. Avva's office and reviewed, stated "[r]arely, the nipple and areola may lose their blood supply and the tissue will die." (Defendant's exhibit C). Therefore, substantial evidence existed that when viewed most favorably for Dr. Avva, a reasonable mind could conclude that Ms. Horton-Thomas was aware of the two surgical techniques and the added risks of the inferior pedicle technique, which she requested.
Further, Ms. Horton-Thomas argues that the jury's verdict was inconsistent as it found that Dr. Avva had failed to disclose a material term and yet, rendered a verdict for Dr. Avva. However, she misstates the facts. The jury in its first interrogatory found, "`Do you find by preponderance of the evidence that Dr. Avva failed to disclose to the plaintiff a material alternative to an inferior pedicle breast reduction surgery?' `No.'" (Tr. 676). Contrary to Appellant's assertion, this is consistent with a verdict for Dr. Avva. The trial court did not err in overruling Ms. Horton-Thomas' motion for judgment notwithstanding the verdict on her claim for failure to disclose a material alternative. Ms. Horton-Thomas' first assignment of error is without merit and overruled.
Appellant's second assignment of error:
Ms. Horton-Thomas argues that the trial court erred in giving a written response to the jury's request for an explanation of the fourth interrogatory over her objection. We disagree.
A trial court's response to a jury's question "should not only be legally correct, but also should be so explicit as not to be misconstrued or misunderstood by the jury in the proper application of the law to the facts in evidence." Columbus v. Triplett (1993), 91 Ohio App.3d 239,246. No prejudicial error exists if upon reviewing the entire charge it appears that the trial court gave a correct statement of law and in such a manner that the jury could not have been misled. State v. Porter
(1968), 14 Ohio St.2d 10, 43 O.O.2d 5; Centrello v. Basky (1955),164 Ohio St. 41, 57 O.O. 77; State v. Hardy (1971), 28 Ohio St.2d 89,92, 57 O.O.2d 284; Furr v. State Farm Mut. Auto. Ins. Co. (1998),128 Ohio App.3d 607.
In this case, the jury was submitted four interrogatories. The first two interrogatories addressed the informed consent claims and the third interrogatory dealt with whether Dr. Avva was negligent in performing the inferior pedicle technique. The fourth interrogatory provided, "Do you find by a preponderance of the evidence that Dr. Avva's failure to act as a physician of ordinary care, skill, and diligence in his specialty would have acted in the same or similar circumstances proximately caused injury to the plaintiff?" During deliberations, the jury asked the trial court the following written question, "Interrogatory #4: We need more clarification (in layman's terms) what this question asks. It seems there may be at least part of a phrase missing." (Tr. 674-675). The trial court judge, over Ms. Horton-Thomas' objection, provided the following written response, "Do you find that Dr. Avva's negligence in going forward with the inferior pedicle breast reduction procedure proximately caused injury to the plaintiff." (Tr. 674-675, 685-686).
The trial court's response was an appropriate response to the jury's question, intending only to clarify the meaning of interrogatory number four in layman's terms. The trial court's written response was legally correct and did not mislead the jury. The trial court's response merely clarified the vague terminology in interrogatory number four by specifically asking if it was Dr. Avva's negligence in performing the inferior pedicle technique that was the proximate cause of Ms. Horton-Thomas' injuries. As the previous interrogatory sought for the jury to determine if Dr. Avva was negligent by using the inferior pedicle breast reduction technique, the trial court's response to the jury was not misleading. Thus, since the trial court's response was not misleading and was legally correct, no prejudicial error resulted. Ms. Horton-Thomas' second assignment of error is without merit and overruled.
Appellant's third assignment of error:
Ms. Horton-Thomas argues that the trial court erred in failing to give the jury instructions on res ipsa loquitur. We disagree.
Typically, the trial court should give any requested instruction if it is an accurate statement of the law applicable to the facts of the case and reasonable minds could reach the conclusion sought by the instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. The prerequisites for giving res ipsa loquitur instructions are that the plaintiff must produce evidence in support of two conclusions, "(1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Morgan v. Children's Hospital (1985), 18 Ohio St.3d 185; see also, Brokamp v. Mercy Hospital Anderson (1999),132 Ohio App.3d 850;Hake v. George Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 52 O.O.2d 366; Oberlin v. Friedman (1965), 5 Ohio St.2d 1, 34 O.O.2d 1. The res ipsa loquitur instruction cannot be based on unsuccessful treatment or a poor medical outcome. Oberlin, supra.
The res ipsa loquitur instruction does not apply to the facts of this case. As to the negligence claim, Appellant fails to meet the second prerequisite for the requested instruction, that the injuries would not have occurred if ordinary care had been observed. Ms. Horton-Thomas' expert testified that fat necrosis, the complication which caused Appellant's injuries in this case, is a recognized complication of the inferior pedicle technique and may occur without negligence. (Tr. 312-14). Dr. Avva's expert also testified that fat necrosis is a recognized complication of breast reduction surgery with both the inferior pedicle and the free nipple graft techniques, even if the doctor is not negligent in the performance of the surgery. (Tr. 496). Therefore, since Ms. Horton-Thomas did not present evidence that the fat necrosis would not have occurred if ordinary care had been observed, res ipsa loquitur instructions were inappropriate on the negligence claim.
As for Ms. Horton-Thomas' claim that res ipsa loquitur instructions should have been given on the issue of informed consent, no authority exists for the application of res ipsa loquitur instructions to a claim for lack of informed consent. A claim for lack of informed consent has three elements:
 [1] The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; [2] the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and [3] a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.
 Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, syllabus. Expert evidence is required to determine to what extent a physician must disclose a risk and when that risk is material. Turner v. Children's Hosp., Inc. (1991), 76 Ohio App.3d 541.
Although Ms. Horton-Thomas argues to the contrary, a res ipsa loquitur instruction is inapplicable to a claim for lack of informed consent. Since informed consent claims stem from a communication process between a physician and a patient, typically with disclosure and discussion between the parties, no instrumentality is involved, as described in the res ipsa loquitur prerequisites. Additionally, since informed consent involves a discussion between two parties, the physician cannot "exclusively" control the communication. As Appellant's informed consent claim does not involve an instrumentality in the exclusive control of the physician, the res ipsa loquitur instruction would be inappropriate. Therefore, the trial court did not err in denying the Appellant's request for a res ipsa loquitur instruction on the claim for lack of informed consent. The third assignment of error is without merit and overruled.
Appellant's fourth assignment of error:
Ms. Horton-Thomas argues that the trial court erred in overruling her objections to the surprise testimony of Dr. Artz. We disagree.
Whether a witness's testimony amounts to surprise testimony to the other party "is a decision that is entrusted to the broad, sound discretion of the trial judge." State v. Diehl (1981), 67 Ohio St.2d 389, 21 O.O.3d 244; State v. Asher (1996), 112 Ohio App.3d 646, 653. The admission of expert testimony may only be reversed on appeal upon a finding of an abuse of discretion. Bostic v. Connor (1988),37 Ohio St.3d 144; Wells v. Miami Valley Hosp. (1993), 90 Ohio App.3d 840. An abuse of discretion amounts to more than a mere error in judgment but rather amounts to an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. "Undue surprise occurs where the expert witness's undisclosed testimony creates a substantial likelihood of surprise, and there is an indication that one party has deliberately disrupted the free flow of information between the parties." Brokamp, supra.
Ms. Horton-Thomas alleges that Dr. Artz, Dr. Avva's expert, gave four surprise opinions: 1) the March 26th photographs are representative of a patient who developed fat necrosis; 2) the March 26th photographs represent the way breasts look after about three months; 3) Dr. Avva's informed consent checklist is so good, that Dr. Artz now uses it for himself, and 4) Dr. Artz gives out the same information as Dr. Avva or words to that effect. As to the first two opinions, Dr. Avva requested that photographs be taken of Ms. Horton-Thomas' breasts to display their current condition and such photographs were taken on March 26th, which was after the deposition of Dr. Artz. Therefore, Appellant did not have the opportunity to question Dr. Artz at his deposition about the March 26th photographs as they were not yet in existence. At trial, the only testimony Dr. Artz gave regarding the March 26th photographs was 1) that they depicted breasts of a patient who has had fat necrosis and 2) that the scaring from the fat necrosis could be made better. Dr. Artz did not state that the March 26th pictures represent the way breasts look after three months. No evidence exists that Dr. Artz's explanatory testimony was a new opinion or that his previous opinion had changed as a result of the March 26th photographs. Similar testimony was given by Appellant's expert stating that Ms. Horton-Thomas suffered from fat necrosis and with reconstructive surgery her breasts could be improved. (Tr. 277, 279). In his deposition, Dr. Artz testified that this case involved fat necrosis in Ms. Horton-Thomas' breasts and alluded to the fact that procedures would have to be performed to make the breasts better after the fat necrosis healed. (Artz depo. p. 43, 54-55, 61). Further, Appellant raised the issue of reconstruction of the breasts as a part of damages and thus, appellant was aware of the issue and had the opportunity to ask Dr. Artz at his deposition about reconstruction. Thus, the opinions of Dr. Artz based on the March 26th photographs were the same as those proffered in the deposition and do not amount to surprise testimony.
The other two opinions of Dr. Artz which Ms. Horton-Thomas argues were surprise testimony are 1) Dr. Avva's informed consent checklist is so good, that Dr. Artz now uses it for himself, and 2) Dr. Artz gives out the same information as Dr. Avva or words to that effect. Dr. Artz testified in his deposition that he believed that Dr. Avva gave Ms. Horton-Thomas the proper information. (Artz depo. p. 30). Dr. Avva's checklist was in his office records which were given to Dr. Artz to review. Dr. Artz's testimony that the checklist was so good that he now uses it and that he gives out basically the same information as Dr. Avva are merely elaborations on Dr. Artz's opinion that the information Dr. Avva gives his patients is sufficient, which was discussed during Dr. Artz's deposition. Additionally, Ms. Horton-Thomas was not materially prejudiced by Dr. Artz's testimony regarding the checklist as the checklist was evidence on the claim of informed consent which Appellant had the opportunity to inquire about at the deposition and to impeach Dr. Artz's testimony at the trial. Thus, Dr. Artz's statements were not surprise opinions and the trial court did not abuse its discretion in permitting their admission. Appellant's fourth assignment of error is without merit and overruled.
Appellant's fifth assignment of error:
Ms. Horton-Thomas argues that the trial court erred in failing to grant her motion for judgment notwithstanding the verdict or, in the alternative, a new trial based on Dr. Artz's surprise testimony and misconduct on the part of Dr. Avva's counsel. We disagree.
The decision to grant or deny a motion for a new trial lies within the sound discretion of the trial court. Meyers v. Hot Bagels Factory, Inc.
(1999), 131 Ohio App.3d 82, 98. Thus, an appellate court may only reverse a trial court's denial of a motion for a new trial upon a finding of an abuse of discretion. Id. As stated earlier, an abuse of discretion is more than a mere error of law but rather demonstrates an attitude on behalf of the trial court which is arbitrary, unreasonable, or unconscionable. Blakemore, supra.
In the instant case, the alleged surprise testimony and attorney misconduct both stem from Dr. Artz's testimony on the March 26th photographs. At trial, the court ruled on the Appellant's objections to questions regarding the March 26th photographs and the trial court ruled that this was not a new line of inquiry. (Tr. 502). As discussed above, we have determined that the trial court did not abuse its discretion in admitting the two brief opinions of Dr. Artz regarding the March 26th photographs. Therefore, the statements of Dr. Artz regarding the March 26th photographs are an insufficient basis for a new trial. As to the alleged misconduct by Dr. Avva's counsel, it appears the alleged misconduct Appellant asserts is Dr. Avva's counsel inquiring of Dr. Artz what condition the March 26th pictures depicted and how the scarring may be repaired. This alleged misconduct did not substantially prejudice Ms. Horton-Thomas nor did it deny her a fair trial. As discussed in the previous assignment of error, the opinions of Dr. Artz regarding the March 26th photographs elicited at trial were not prejudicial to Ms. Horton-Thomas as the opinions were the same as Appellant's experts and were not different from those expressed during Dr. Artz's deposition. (Tr. 277, 279; and Artz depo. p. 43, 54-55, 61). Therefore, no evidence exists that the trial court acted arbitrarily, unreasonably, or unconscionably in denying Ms. Horton-Thomas' motion for judgment notwithstanding the verdict or a new trial. The fifth assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
 ______________________________ FREDERICK N. YOUNG, J.,
BROGAN, J. and GRADY, J., concur.
[1] Her two-year-old son, McCauley C. Thomas, was also listed as a plaintiff, but has no role on appeal. We will treat Ms. Horton-Thomas as the sole appellant.